Wheeler, J.
A question of the admissibility of evidence is presented, which may be disposed of before proceeding to consider the merits of the case.
It is objected to the admissibility in evidence of the copy of the defendant’s certificate and field notes from the General Land Office, that they are attested by the chief clerk, and not by the commissioner.
The act of the 14th of December, 1837, section 3, (Hart. Dig., art. 1839.) provides that, in the absence of the Commissioner of the General Land Office, or in case of his inability to attend to the duties of his office, the chief clerk shall perform all the duties appertaining to the office. The act of 1S46, (Hart. Dig., art. 2175.) further provides that, “ in case of the sickness, death, or resignation of the Commissioner of the General Land Office, it shall be lawful for the chief clerk to act, and perform all the duties required of said commissioner.” We regard the latter of these statutes as merely cumulative ; consequently, in any event contemplated by either statute, it is competent for tlie chief clerk to perform the duties appertaining to the office of commissioner. And where he has acted in this capacity, the presumption is that some one of the contingencies existed on the happening of which he was authorized to act. The objection to the admissibility of tlie evidence, therefore, is not tenable. (Hart. Dig., art. 1841.)
The determination of the merits of the case requires a consideration of the relative strength of the respective titles of the plaintiffs and defendant. For it is evident that the joint resolutions gave a title to the heirs of Hibbins from their date, which will be good as against the defendant, if he liad not a right to the land previously acquired. But if, on the other hand, Hibbins, in 1832, When his alleged title bears date, acquired an equitable title to the land, tlie legislative action in 1844 would relate back and operate a confirmation of his title from its inception, and would supersede the intervening equitable title of the defendant, acquired by his location and survey in 1839 and 1840. (Warren v. Shuman, 5 Tex. R.; Lee Bois v. Bramell, 4 How. U. S. R., 449 ; Mills v. Stoddard, 8 Id., 345.)
The .material inquiry, then, is, had the plaintiffs an equitable title to the land by virtue of the alleged grant to Johu Hibbins, in 1832?
*133 It. is manifest, from the facts disclosed by the record, that the pretended title, to Ilibbins was but a blank form, like those which the witness Williams testifies -were sometimes left in blank by the commissioner to facilitate ihe extending of titles to colonists in his absence. The only part of Ihe instrument which has even the semblance of an act conferring a right is what purports to ho the order of survey. This professes to be made oil the “information given by the agent, Samuel 31. Williams, in the foregoing statement.” That foregoing statement, however, is wanting; and where it would have been placed, if it hail an existence, there is a blank. There is also a blank for the name of the surveyor. The supposed order of survey is evidently incomplete, a mere blank form, intended to be used for the benefit of any colonist who might present himself witli the favorable report of the empresario. The space between the supposed order of survey and the conclusion or attestation of the iuslniment would have beeu filed with the field-notes of the survey and the operative words of the grant if there had beeu a grant. The translated copy of the instrument in Spanish, from the General Land Office, aud which may bis described as document No. 2, answers to what should have filled this; blank to have constituted the instrument a title. But this document was made out by the Commissioner of the Land Office, in embodying the field-notes of the survey in Ute blank in the original instrument, by authority of the joint resolution of 1844, and, of course, liad no existence previous to that time.
Without resorting to the parol evidence on that point, the conclusion is irresistible, from the evidence introduced by the plaintiffs, that no title was, in fact, issued to Ilibbins. It is admitted that there was a survey of the'laud. But there is nothing in the record showing distinctly when and for whom the survey was made. It is alleged in the petition that it was made in 1834 and 1S35; yet the instrument introduced as the title bears date in 1S32. It is probable that Ilibbins had selected this survey, in anticipation of obtaining a grant, from plots of surveys in the Land Office, spoken of by tiie witness. He appears to have claimed the land embraced in it. However, it is at. best a mere naked survey of the laud, made, it may be, for Ilibbins, but without a legal order of survey, and, consequently, without the authority of law.
A mere survey, without an order of survey, was not a legal appropriation of the land. It did not sever it from the mass of the public domain. This survey and a blank form of a title are all that the plaintiffs appear to have had previous to the passage of the joint resolutions in 1844. That these did not constitute an equitable title or any legal claim to the land in question, is quite too clear to require illustration.
At tile time, then, of the defendant’s location and survey there had been no legal appropriation of the land, hut it remained vacant and unappropriated public domain, and. of course, subject to his location. By virtue of that location lie acquired an inchoate right, capable of being carried into a patent. It was a vested legal right, protected by the constitutional guaranties of the right of property. If it were competent for the Legislature, by retrospective legislation, to create a right, where none before existed, in one person to the prejudice of another, they have not done so in the present case. On the contrary, the saving contained in the proviso embraces and reserves the right of the defendant. IBs right, therefore, was not affected by the joint resolutions, and is of a character to enable him to maintain or defend an action for the laud; consequently, his is the superior title.
But it is objected to the. defendant’s survey, that it was made by and for himself. It, however, was approved by the district surveyor, and thereby became, in contemplation of law, his act.
It is further objected that the certificate of the defendant does not appear to have been certified, under the hand and seal of the clerk of the County Court or the Commissioner of the General Land Office, to have been recommended as legal and genuine, as required by the act of 1840. (Hart. Dig., art. 1983.J
Note 44. — Hart v. Gibbons, 14 T., 213; Mage© v. Chadoin, 30 T., 044. "Where there is a proviso saving the rights of third persons, they will not be affected by the act. (Hamilton v. Avery, 20 T., 012.)
In the case of Peacock v. Hammond, (6 Tex. R.,) the opinion was expressed— and we are satisfied of its correctness — that there was no necessity that 1 lie cer-tiiicatcof recommendation should be annexed to tlie headlight certificate; and that, when a survey is shown to have been made upon a certificate recommended as legal and genuine, it will be presumed that tlie officer did his duty, and acted upon tlie requisite evidence of the genuineness of the certificate.
But this court lias not decided, as seems to have been supposed, that if the licadright certificate was not accompanied by tlie prescribed evidence of ils having been recommended, tlie survey upon it would be therefore void. What we have decided on this subject is, that the surveyor cannot be compelled. to survey unless tlie prescribed evidence of tlie genuineness of the certificate be furnished him. (Bracken v. Wells. 3 Tex. R., 88.) But, in issuing tlie patent, the commissioner does not look to the evidence upon which tlie surveyor acted in making the survey, but simply to tlie fact of whether the certificate has been duly recommended. (Glasscock v. The Commissioner of the General Land Office, 3 Tex. R., 51.) The evidence required to be furnished the surveyor is merely for his information. It has no influence whatever on the question of right. And I have no hesitation in saying that a proper survey, made upon a genuine certificate will be valid, from whatever source tlie surveyor may have derived the evidence of its genuineness.
True, the statute declares that “any survey made contrary to tlie meaning and intent of this act shall be null and void. (Hart. Dig4., art. 1984.) And so it must be. But what is the true intent and meaning of the act? It is entitled, “Au act prohibiting tlie location of fraudulent land claims.” All its denunciations are directed against that class of claims, and were intended to ■be applied to none other. Hone other come within the intent and meauing of the prohibitions of tlie act. It was not its object or intent to destroy acts done and rights acquired by virtue of legal and genuine certificates; but its object was to afford favor and protection to these, by preventing tlie appropriation of the public domain by those which were fraudulent. To this end, evidence was prescribed which should afford tlie surveyor certain information that the certificate was genuine; and severe penalties were denounced against “any surveyor offending against tlie true intent and meaning of this act.” (Hart. Dig., art. 1983.) I regard the act, in so far as it prescribes tlie evidence on which the surveyor shall act, as only directory; and I have no conception that a surveyor, who, upon his own knowledge of tlie fact, however acquired, should survey upon a certificate which liad been duly recommended, would, in tlie least, offend against the “true intent and meaning” of the act. (3 Ret. R., 320.)
I have expressed my opinion more fully on this subject than, perhaps, the present case required, for the reason that doubts appear to have been entertained, when, in my opinion, there cannot, rationally, a doubt exist as to what is the true construction of the statute.
Finally', it is objected that it does not appear that the defendant’s certificate had, in fact, been recommended.
It appears that the plaintiffs admitted, on the trial, that it was a good certificate. By this, it must have been intended that it was a certificate which had been duly recommended; for, otherwise, it could not have been said to be a “good” certificate. Ho other sensible meauing can be attached to the word “good,” as here employed, than'that it was used to denote a certificate which was good in law, in contradistinction to such as are deemed fraudulent and void.
We conclude that, at tlie time of the defendant’s location and survey, the land was vacant; that, by virtue of that location and survey, he acquired a right to it, and that that right was not divested by the joint resolutions of 1844.
Judgment affirmed.
Note 45. — Sherwood v. Fleming, 25 T. Supp., 408; Fowler v. Allred, 24 T., 184; Wright v, Hawkins, 28 T., 452.