HYMAN BLUM v. HOUSTON & TEXAS CENTRAL
RAILWAY COMPANY ET AL.

No. 1820.

1. **Surveys—Corrections and Conflict—Validating Act.**—There was an attempted correction and resurvey of certain orginal surveys in a block of railroad land, but, through mistake, the resurveyed sections were placed in conflict with others in the same block. Both the original surveys and the resurveys were made without legal authority by the surveyor of another land district. *Held,* that the effect of the Act of April 4, 1881 (2 Sayles' Civil Statutes, article 3906a), validating all surveys in that district in so far as they were illegal because made by the surveyors of another district, was to validate only the original surveys in such block, and not the resurvey void because of the conflict.

2. **Same—Abandonment—Intention.**—No abandonment of any of the lands as originally surveyed resulted from such mistake and erroneous resurvey, as there was no intention of abandonment.

3. **Same—Estoppel.**—The making of such erroneous resurvey and procuring patents thereon will not estop the owner of the land to have the resurveys canceled and claim the surveys as originally made, as against one who, after the patents issued, but with knowledge of the mistake, locates certificates upon the sections apparently left vacant by reason thereof.

4. **Constitutionality of Validating Act—Land Certificates.**—The requirement of section 2, article 14, of the Constitution of 1876, that all outstanding land

certificates should be surveyed and returned to the General Land Office within five years thereafter, does not deprive the Legislature of the power to validate after that time the survey of a certificate which was illegal because made by the surveyor of another district.

APPEAL from Hardeman.   Tried below before Hon. G. A. BROWN.

*Sayles & Sayles,* for appellant.—1.   The land located on by the plaintiff, Hyman Blum, was vacant and unappropriated public domain at the time of his location thereon in 1888.   Adams v. Railway, 70 Texas, 267; Land Co. v. Thompson, 83 Texas, 179; Sanborn v. Gunter, 84 Texas, 273.

2.   The court erred in holding that the validating act of July, 1881, applied to the Houston & Texas Central Railway Company's surveys made in 1872.   Land Co. v. Thompson, 83 Texas, 179; Railway v. Adams, 68 Texas, 230.

3.   The railway company is estopped to claim its original location as against appellant.   Mayer v. Ramsey, 40 Texas, 375; Love v. Barber, 17 Texas, 312.

4.   It is not within the power of the Legislature to infuse life into that which is dead.   9 Pa. St., 409; Norman v. Heist, 5 Walls and S., 171; Greenough v. Greenough, 11 Pa. St., 489; 15 Pa. St., 18; 33 Pa. St., 495; 43 Pa. St., 512; 54 Pa. St., 304; 75 Pa. St., 503; 6 Neb., 37.

*T. D. Cobbs,* for appellees.—1.   The lands in controversy were not subject to the location of appellant; the lands were not vacant and unappropriated public domain, but were appropriated lands, the evidence of which was on the county records and in the General Land Office, and also shown by the maps of the railway company; and appellant had actual notice of the claim of the railway company at the time his pretended locations were made.   Const., art. 4, sec. 2; Id., arts. 3936–3951; Poston v. Blanks, 77 Texas, 331; Winsor v. O'Connor, 69 Texas, 571; 2 Sayles' Real Estate Laws, arts. 723, 724; Railway v. Thomson, 65 Texas, 186; Hollingsworth v. Holshousen, 17 Texas, 41; Heinrick v. Dodd, 62 Texas, 89; Morris v. Brimlee, 14 Texas, 286.

2.   The court correctly held that the validation of the Act of July, 1881, applied only to the original surveys made for the railway company in 1872.   Acts 1881, p. 101; Cox v. Railway, 68 Texas, 226; Duren v. Railway, 24 S. W. Rep., 258.

3.   The certificates being valid at the time the surveys were made, and at the time they, together with the surveys made thereby in 1872, were returned to the Land Office, the Act of 1881 which validated the same was not in violation of any constitutional provision.   Acts 1881, p. 101; Cox v. Railway, 68 Texas, 226; Duren v. Railway, 24 S. W. Rep., 258; Cool. Const. Lim., 209, 210; Barker v. Torrey, 69 Texas, 7; Morris & Cummings v. The State, 62 Texas, 741; Blum v. Looney, 69 Texas, 3.

HEAD, ASSOCIATE JUSTICE.—In 1872 the Houston & Texas Central Railway Company attempted to locate a block of surveys consisting of about 500 sections in what was then Hardeman (now Foard) County. The file was made with, and the surveys made and returned to the Land Office by, the surveyor of the Jack land district, and they were therefore defective, Hardeman County being at that time attached to another land district.    These surveys were made by first establishing the southeast corner of the block, and then laying off the several sections in square form adjoining and calling for each other.

In 1873 the Commissioner of the General Land Office and the railway company, acting together, sent Dennis Corwin, a competent surveyor, into that country to make connections and to obtain data to explain or correct some discrepancies which appeared upon the maps of the land office in reference to this as well as other blocks of railroad surveys.    When Corwin reached the locality, he discovered that this block had been surveyed without reference to Pease River, which ran through it, and he, after being appointed a deputy surveyor for Jack land district, undertook to correct the field notes of the surveys which he thought lay adjacent to the river by making them conform to the law in reference to locations upon navigable streams.    In making these corrections he meandered the river, and made the new field notes to correspond therewith.    He made a serious mistake, however, as to the numbers of the sections that should have been corrected, and instead of changing the field notes of those which actually adjoined the river, he changed those of a number of sections which were situated about one mile south thereof.    In this way it was made to appear that the location of these last named sections had been "lifted" or "floated," and located about one mile north, along Pease River, in conflict with other surveys made in 1872, as aforesaid.

This attempted correction or relocation was defective, because made by a deputy surveyor of the Jack land district, Hardeman still being attached to another county for surveying purposes; also because the certificates thus attempted to be relocated were not in the hands of the surveyor, they still being in the General Land Office, where they were filed with the field notes made in 1872; but for the defect above noted in the 1872 surveys, it would also have been defective by reason of its conflict with other sections of such prior location.    These new field notes were, however, returned by Corwin to the General Land Office, and were filed as corrections with the corresponding certificates and field notes already there.    In 1881, after the validating act of that year had taken effect, patents were issued to the railway company upon several (four or five) of these surveys according to these new field notes, while a number of others still remain unpatented.

In 1888 appellant discovered the mistake that had been made by Corwin in 1873, and treating what had previously been done as above set forth as a "floating" or abandonment of the 1872 location, as to the sections so purporting to have been corrected, located certificates

upon the railway's part of the land thus claimed to have been vacated, but not upon the school sections. As soon as the railway company learned of this (in 1889), which was the first time its attention had been called to the mistake, it returned for cancellation the patents it had taken out upon Corwin's field notes, and the commissioner issued it new patents according to its original surveys as made in 1872.

Appellant instituted this suit to cancel these last patents, and to establish the alleged superiority of his title over that of the railway company to that part of the surveys claimed to have been abandoned by it upon which he had located.

It will thus be seen that one of the most important questions for our decision is as to which one of the surveys of these sections made for the railway company was validated by the Act of 1881, they both prior to that time being void by reason of having been made by the wrong surveyor. The material part of the act referred to is as follows:

"Sec. 3. All surveys in the counties of Hardeman * * * made by virtue of genuine and valid certificates, after the 6th day of November, 1866, and prior to April 29, 1874, now in the General Land Office, and not now in conflict with any other survey on file therein, are hereby declared legal and valid, whether made by the surveyor of Jack, Montague, or Clay land districts." 2 Sayles' Civ. Stats., art. 3906a.

To give this act a literal interpretation, it might be said to validate both of these surveys; but it is perfectly manifest that the Legislature did not intend thereby to make good two locations made by virtue of the same certificate, each for the full amount of land to which the owner was entitled. Appellees' counsel does not contend for this construction. Our opinion is that this statute was only intended to heal such defects in the surveys referred to as might exist by reason of their having been made by the wrong surveyor, and that it was not intended to cure any other defect therein.

If we are correct in this interpretation of the statute, it follows that the survey of 1872 was the only one that could have been validated by it. The Corwin survey was defective, not only because it was made by the wrong surveyor, but also because it was a relocation, not a correction made by the surveyor without having the certificate or a copy in his possession. It would also seem not to fall within the purview of the validating act, because the relocations thus attempted were in conflict with other sections surveyed in 1872 and then on file in the Land Office. It will be observed that the act by its terms did not purport to validate a survey in conflict with another survey on file in the Land Office. We therefore conclude that the Corwin survey made in 1873 was not cured by the Act of 1881, but continued fatally defective after its passage.

But does it follow from this that the survey of 1872 was made valid? If it had not been abandoned as to these sections previous to the passage of that act, it will be conceded that it came plainly within its pro-

visions. The only defect in this location was that it was made by the wrong surveyor. If, however, it had been abandoned and the certificates "floated" therefrom previous to 1881, it would seem clear that the certificates were not returned to and the land reappropriated by that act. The question is, then, was there an abandonment? It will be conceded that this was never intentionally done, either by the railway company or any one representing it. Appellant only contends that in making the new field notes Corwin made a mistake in the numbers of the sections he sought to correct, and that his intention was to still embrace all of the land included in the original surveys. We have already seen that these new field notes were themselves nullities. Should, then, the procuring and filing in the General Land Office of field notes of a void relocation have the effect in law to establish an abandonment of the prior location, such not being the intention of the owner? We think not, unless the subsequent locator can show that he was thereby misled to his prejudice, under such circumstances as will create an estoppel in his favor. To establish such an estoppel, appellant urges that the railway company not only procured and filed the field notes for the relocations, but also had patents issued upon some of them, and that as to these patented surveys he at least has the better right. Had he gone farther and shown that he, acting in ignorance of the mistake and in good faith, relying upon the patents as an abandonment of the original locations, had located his certificates upon the land thus supposed to have been abandoned, we think his position would have been well taken. He does not do this, however, but in effect admits that he was the one who first discovered the mistake, and desiring to avail himself thereof, made his locations upon the idea that one who files in the Land Office field notes which upon their face appear to be an abandonment of an older survey, and procures a patent to be issued thereon, will be held in law to have irrevocably abandoned such prior location, mistake or no mistake. This position does not seem to us sound. We can see no good reason why honest mistakes of this kind should not be corrected, where the rights of innocent third parties have not intervened, upon the same principles that apply to dealings between individuals. Our statute expressly authorizes the commissioner, upon the request of the owner, to cancel patents issued in conflict with older titles, as these were after the validating act of 1881. 2 Sayles' Civ. Stats., art. 3965.

Appellant also contends, that inasmuch as both the surveys of 1872 and 1873 were void, the certificates by virtue of which they were made could not be said to have been surveyed and returned to the General Land Office within the five years required by the Constitution, and were therefore barred by that instrument, so that they could not be revitalized by the passage of the Act of 1881.

The clause of the Constitution bearing upon the question is as follows: "All unsatisfied genuine land certificates now in existence shall be surveyed and returned to the General Land Office within five years.

after the adoption of this Constitution, or be forever barred." Const. 1876, art. 14, sec. 2.

The only defect in the survey of 1872 was, that it was made by the wrong surveyor. This, however, was so serious as to render it absolutely void. Cox v. Railway, 68 Texas, 226. Did the Legislature then have the power to validate such a survey, after the period prescribed by the Constitution as a bar of the certificate? We have ever regarded this as a serious question, and in Duren v. Railway, 86 Texas, 287, certified it to our Supreme Court for decision. The answer was returned in the following language: "The location of the certificates under which appellees claim, having been made by a surveyor who had no power to accept a file or make a survey, was wholly without authority of law, and therefore of no effect whatever. As between the locators and the State, the locations were subject to be validated by an act of the Legislature, but not as against any right of a third party lawfully acquired by appropriation before the passage of the act. Howard v. Perry, 7 Texas, 259."

Also in Cox v. Railway, supra, it is said: "The Legislature could validate the surveys and issue patents upon them, because it had power at that time to grant the land to the owners of the certificate, no matter how illegally the surveying might have been done. But it could not ratify so as to interfere with the rights of other parties to the land, accruing previous to the passage of the act by which the ratification was effected. Wright v. Hawkins, 28 Texas, 452."

We must treat these decisions as conclusive of the question, although the particular phase of it now presented does not seem to have been argued in either of them.

What we have said is decisive against appellant, and the judgment of the court below will therefore be affirmed.

*Affirmed.*

Delivered April 17, 1895.

ON MOTION FOR REHEARING.

HEAD, ASSOCIATE JUSTICE.—Appellant's motion for rehearing is overruled, but at its request additional conclusions of fact are filed, as follows:

The field notes of each of the 1873 surveys, called corrected field notes, describe a certificate of the Houston & Texas Central Railway Company, and state that the land therein described is located and surveyed by virtue of said certificate. The surveys of 1873 were made by meandering the river upon the ground and writing out field notes to correspond therewith, the other lines not being run. If the survey of 1873 was an abandonment of that of 1872 as to the certificates described in the former, and is the one that was validated by the Act of 1881, then it is true, that at the time of appellant's location in 1888 all of the land in controversy was vacant unappropriated public

·domain. In 1881, after the validating act took effect, patents on four of the surveys made in 1873 were issued to the Houston & Texas Central Railway Company, based thereon. If the railway company is bound by the description contained in these patents, and the cancellation thereof made as stated in the opinion was unauthorized and illegal, then the land upon which is located appellant's W. G. Hunt 629 81–100 acres certificate, M. Caro 101½ acres certificate, S. Habermacher 101 56–100 acres certificates, S. Habermacher 229 acres certificate, and Matilda Johnson 409 95–100 acres certificate, was at the time of such location vacant and unappropriated public domain. The Houston & Texas Central Railway Company certificates are dated July, 1872, and the only locations, surveys, and returns thereof were made on land in Hardeman County in 1872 and 1873, by the surveyor of the Jack land district, who was without authority to act.

That part of appellant's request which asks us to strike from our original conclusions the statement, that "in 1888 appellant discovered the mistake that had been made by Corwin in 1873," is refused. That finding is believed to be fully sustained by the attendant circumstances, as well as by the following quotation from the statement of facts, page 27 of the transcript: "It was proven that the maps of the General Land Office & of Hardeman County did not show any vacancy between the surveys of the Houston & Texas Central Railway Company block 'A,' Hardeman County, as made in 1872 and as made in 1873. * * * It was proven that the Houston & Texas Central Railway Company did not know of the error in the work of 1873 until the plaintiff's locations were made in 1888, and that plaintiff did (not) know about it until shortly prior to the date of his locations, but the exact manner in which the error occurred was not discovered until Dennis Corwin resurveyed a portion of the land a short time ago, and which was after plaintiff's locations were made."

*Overruled.*

Delivered June 5, 1895.