### LUTCHER et al. v. GRANT.[†]

(Court of Civil Appeals of Texas. Galveston. Dec. 8, 1911. On Motion to Change Conclusions of Fact, Jan. 29, 1912.)

1. ADVERSE POSSESSION (§ 64*)—PERMISSIVE POSSESSION—DONOR AND DONEE.

Where one moved on and improved land on the faith of a verbal gift and claimed to own 160 acres of a larger tract, claimed by the donor, the donor never having asserted any claim to the 160 acres after the gift, the entry on the land was not by permission; but title could be acquired by adverse possession, without notice of repudiation of a permissive possession and a claim under right.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 64.*]

2. ADVERSE POSSESSION (§ 107*)—ACTS CONSTITUTING.

Where one moved on and improved land on the faith of a verbal gift, and he claimed to own 160 acres of a larger tract, claimed by the donor, and he actually improved 35 acres, and his 160 acres was definitely located by a survey without materially injuring the shape of the larger tract, he acquired title by adverse possession to the 160 acres by continuing in the adverse possession for 10 years.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 107.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

3. TRIAL (§ 295*)—INSTRUCTIONS—CONSTRUCTION.

Where the charge as a whole correctly presented the issues, any inaccuracy in a single paragraph of the charge, which could not mislead the jury, did not render the charge erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. § 295.*]

Appeal from District Court, Sabine County; W. B. Powell, Judge.

Action by H. J. Lutcher and others against W. J. Grant. From a judgment for defendant, plaintiffs appeal. Affirmed.

Holland & Holland, for appellants.

PLEASANTS, C. J. This is an action of trespass to try title brought by appellants against the appellee to recover the title and possession of a tract of 160 acres of land, a part of the Wm. F. Clark survey in Sabine county. The defendant pleaded limitation of 10 years. The trial in the court below with a jury resulted in a verdict and judgment in favor of defendant.

The appellants have title to the land in controversy, unless appellee has acquired title thereto under the 10-year statute of limitation. Upon this issue, the evidence sustains the following conclusions of fact: Some time prior to 1870, Ed Smith, a brother-in-law of defendant, bought 3,428 acres of the Wm. F. Clark league at a tax sale, and he and his father, John Smith, to whom he conveyed a half interest in the land, made settlements thereon. In 1871 they told the defendant that if he would build on the land and move there with his family they would give him a home thereon. The defendant accepted this offer, and in the latter part of 1871 began to make improvements on the land, and in January, 1872, built a house on the land in controversy and moved there with his family. He has resided on this place continuously since that time, except during the year 1874, and for that year it was occupied by a tenant, who held under him. He has always claimed 160 acres of the land as his home. In the year 1900 he had the 160 acres in controversy surveyed, and since that time he has claimed this specific 160 acres. His improvements, all of which are on this 160 acres, consist of two dwelling houses, a stable and corncrib, a smokehouse, and a field of about 30 acres. One of these dwelling houses was built in 1872, and a portion of the field was put in at that time. He never procured a deed to any portion of the land from either of the Smiths. Some time prior to the survey of the land in 1900, the parties who held the title at the time of the tax sale to Smith, or those holding under said parties, effected a compromise with the Smiths, by which the Smiths acquired 1,000 acres of the survey and released to said parties their claim to the remainder. The 1,000 acres acquired by the Smiths in this compromise agreement did not include any of the land claimed by the defendant. This suit was filed November 3, 1903.

[1] The first assignment of error and the proposition thereunder are as follows:

"The trial court erred in not sustaining appellants' motion for new trial on the ground that the verdict of the jury was contrary to the law and the evidence, in that it is shown by the testimony of the defendant, Grant, and was undisputed that said Grant entered into possession of his claim by and with the permission of another, and his possession was not under a claim of right, but permissive, and he never repudiated such tenancy and never disclosed to the owners of the land any intention to so repudiate."

"When an entry is made upon lands by permission, and possession is held under such permission, such possession never becomes adverse until such tenancy is repudiated and notice thereof given to the owners of the land."

There is no merit in this assignment. The principle of law upon which the proposition presented under the assignment is based has no application to the facts of this case. The defendant was never a tenant of the Smiths, nor of the real owners of the land. He did not go on the land as a tenant of the Smiths; but the undisputed evidence shows that he was given the land by the Smiths, and moved on and improved it on the faith of this verbal gift, and has always claimed to own it, and this claim was never questioned by either of the Smiths. There was nothing for him to repudiate. The Smiths never asserted any claim to the land claimed by defendant; but, on the contrary, having given it to him, they always recognized his ownership thereof.

[2] The second assignment complains of the judgment on the ground that the verdict is not supported by the evidence, in that there is no evidence that defendant, prior to the survey made of the 160 acres in 1900, ever claimed more than the 35 acres of land actually occupied by him. The defendant testified: "I have been living there on that land all the time and making those improvements, because I claimed it as my home. I have been claiming 160 acres. I have claimed this 160 acres [the land described in the petition] about all the time I have been there the last time since 1875. * * * As to whether I did not know the metes and boundaries of my land before I had it run out, will say I claimed 160 acres. I knew the southern boundary of my claim and the northern boundary. I didn't know the others exactly." This testimony is sufficient to sup-

port the finding that the defendant has been continuously claiming 160 acres of the land, including his improvements, and, under the rule established by the cases of Louisiana & Texas Lumber Co. v. Kennedy (Sup.) 126 S. W. 1110, and Louisiana & Texas Lumber Co. v. Stewart, 130 S. W. 199, would entitle him to 160 acres of land out of the tract on which his settlement was made.

The trial court instructed the jury that defendant had not shown an adverse claim for 10 years to the specific 160 acres claimed by him in this suit, and that they could not find in his favor for said 160 acres, unless they found that the survey made so segregated the 160 acres claimed by him as not to materially injure the shape of the larger tract, and that said 160 acres was of equal value with the balance of the larger tract. The appellants do not contend that the evidence does not sustain the finding of the jury that the partition of the land made by the defendant by his survey of 160 acres was fair and equitable. Such being the state of the record, the second assignment of error cannot be sustained.

The charge complained of by the third assignment of error was applicable to the facts in evidence, and presented an issue raised by the evidence, and could not possibly have misled the jury on the question of what constitutes adverse possession; the court having, in other portions of the charge, correctly instructed the jury upon this question.

The court did not err in refusing the charge set out in the fourth assignment of error. The charge given by the court properly instructed the jury as to what they must find in order to entitle defendant to recover 160 acres of the land, and the evidence was not such as to require a negative presentation of the question.

The court did not err in refusing to give the jury the instruction set out in the fifth assignment of error. As before said, in discussing the first assignment of error, the evidence does not raise the issue of defendant's holding possession under or as a tenant of the Smiths, and that issue should not have been submitted to the jury.

[3] There is no error in the paragraph of the charge set out in the sixth assignment of error. The charge as a whole fully and correctly presents the issue of the adverse possession and claim of the defendant and the extent of such claim. If there is any inaccuracy in the paragraph of the charge complained of in this assignment, it could not, when the whole charge is considered, have misled or confused the jury.

We think none of the assignments presents any error which would authorize a reversal of the judgment, and it is therefore affirmed.

Affirmed.

**On Motion to Change Conclusions of Fact.**

In response to appellants' motion to change conclusions of fact we find that when appellee was invited by his father-in-law and his brothers-in-law to settle on the land in controversy and told that if he would move on the land they would give him a home thereon, that no mention was made as to the quantity of land he would be given.

Ed Smith testified: "I know whether Mr. Grant has been claiming land over there. I don't know how much he claimed at the time he went there. There was no certain amount designated. There were two pieces of hammock there and a branch run between them. McDaniell married a sister of mine and we told each of them they could have a home there and we designated what we called the lower hammock that Grant settled on as a home and McDaniell could settle the upper hammock. There was nothing said about the number of acres he was to have when he went on the land, but he was to have a home on it and he settled it and has been occupying the lower part of that land ever since."

It may be gathered from the testimony that the lower piece of hammock land mentioned by this witness did not include more than 35 acres and appellee's improvements and inclosures were all on this 35 acres. The fact remains, however, that appellee understood he was to have 160 acres and, as stated in the opinion filed herein, he has been claiming 160 acres continuously ever since his settlement on the land.