**CARLETON–FERGUSON DRY GOODS CO. v. McFARLAND et al. (No. 9405.)**

(Court of Civil Appeals of Texas. Fort Worth. Dec. 18, 1920. Rehearing Denied Jan. 22, 1921.)

1. **Trial ☞237(3)—Proof by "full and satisfactory evidence" requires proof beyond reasonable doubt.**

To require proof of a fact by "full and satisfactory evidence" is equivalent to a requirement that the fact must be proved beyond a reasonable doubt.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Full Evidence; Satisfactory Evidence.]

2. **Gifts ☞49(4)—Parol gift of land need be shown only by fair preponderance of evidence.**

A parol gift of land may be established by a fair preponderance of the evidence just as in any other civil action.

3. **Gifts ☞49(4)—Payment of taxes not conclusive against gift of land.**

Payment of taxes on land by alleged donor after date of alleged parol gift is a circumstance tending to refute an allegation of gift, but it is not conclusive.

4. **Gifts ☞25—Possession taken by husband of donee sufficient.**

Possession of property taken and held by husband of donee for and in behalf of his wife in reliance on a parol gift to her is sufficient, especially where that possession is shared in part by the wife in person, and donor during

entire period of possession recognizes ownership of land in the wife.

**5. Gifts ⬤⇒25—Possession by husband as partner of donor of land given to wife held not denial of right of possession in wife.**

Where it was claimed that father made parol gift of land to daughter, conduct of a partnership business on the premises by the father and the daughter's husband was not necessarily a denial of the right of possession in the daughter through her husband.

**6. Adverse possession ⬤⇒16—Possession by husband who was partner of owner of land not adverse to wife.**

Where father made parol gift of land to daughter and daughter's husband conducted, along with the father, the business of a partnership on the premises, the husband having the sole and exclusive management of the business, the possession of the husband was not adverse to the daughter, as a partnership has no separate legal entity such as a corporation possesses.

**7. Gifts ⬤⇒25—Improvements held not insufficient to warrant proof of parol gift of land.**

In an action to have land given by parol to daughter applied to pay grantor's debts, contention of plaintiff that improvements were not sufficient because less than the rental value of the land untenable, where the rentals of the land up to the time the first improvements were made did not equal one-half the cost of such improvements.

**8. Gifts ⬤⇒51—Instruction held properly refused as misleading.**

In an action to have land deeded by father to daughter applied in payment of debts of father, where daughter claimed land was deeded in pursuance of a prior parol gift, a requested instruction that an understanding between the father and daughter that the land was given to her "on condition that she and her husband remain in Texas or upon any other condition would not be sufficient" to constitute a gift was properly refused because misleading.

**9. Evidence ⬤⇒272—Witnesses ⬤⇒395—Declarations of donor admissible in support of parol gift of land and in corroboration of testimony.**

Statements of donor of land made to third persons in the absence of the donee after an alleged gift had been made were admissible in support of the gift as against an attacking creditor, where at the time that they were made donor had no possible motive to fabricate, not only as declaration against interest, but to corroborate his testimony, where creditors introduced written statements by donor in which he claimed the property in controversy as his own and which tended to impeach his testimony on the trial in behalf of the donee.

**10. Appeal and error ⬤⇒1051(1)—Erroneous submission of evidence held harmless in view of other positive evidence.**

If there was error in admitting testimony of witness that there was a general understanding in the family that father had made parol gift of land to daughter, the error was harmless, where each and every member of the family testified positively to the effect that

such was his or her understanding, and the testimony was based on repeated declarations of father in the presence of his family that the property belonged to his daughter.

### On Motion for Rehearing.

**11. Evidence ⬤⇒273(4)—Declarations of alleged donor held admissible as explaining character of possession.**

In an action to have land of daughter applied on debt of father, where daughter claimed parol gift from father and under the statute of limitations, declarations of father that land belonged to daughter were admissible as tending to explain the character of possession of the land by the father and the daughter's husband as partners in the cattle business.

**12. Fraudulent conveyances ⬤⇒57(1) — No creditors' lien on land given by debtor to daughter while solvent.**

If debtor at the time he made a gift of land to his daughter was rich and not insolvent, creditors had no lien on the land.

**13. Fraudulent conveyances ⬤⇒44—No creditors' lien on land in which debtor had no real interest.**

Where debtor and partner were conveyed land, but the partner paid all the purchase money for it, creditors could not have the land applied in payment of their debts in an action instituted after its conveyance to the wife of the partner.

Appeal from District Court, Parker County; F. O. McKinsey, Judge.

Suit by the Carleton-Ferguson Dry Goods Company against Mrs. Carrie E. McFarland and others. Judgment for defendants, and plaintiff appeals. Affirmed.

H. C. Shropshire, of Weatherford, and Head, Dillard, Smith, Maxey & Head, of Sherman, for appellant.

Flournoy & Smith, of Fort Worth, and Hood & Shadle, of Weatherford, for appellees.

DUNKLIN, J. During the year 1914 W. H. Eddleman, for the recited consideration of love and affection, executed two deeds of conveyance to his daughter, Mrs. Carrie E. McFarland, to approximately 4,600 acres of land situated in Parker county, as her separate property, one of the deeds being dated June 16, 1914, to approximately 4,000 acres, and the other being dated July 16, 1914, to about 550 acres, being an undivided half interest in one tract known as the Christian tract of 700 acres which had been deeded to W. H. Eddleman and defendant F. H. McFarland in 1901, and an undivided half interest in another tract of 400 acres which had been deeded to W. H. Eddleman and F. H. McFarland in 1907 and known as the Ruland tract.

This suit was instituted by the Carleton-Furgeson Dry Goods Company against W. H. Eddleman, Mrs. Carrie E. McFarland, and her husband, F. H. McFarland. The

suit against W. H. Eddleman was to recover upon several promissory notes which the evidence shows was executed by him as surety for the Burton Dry Goods Company; and the claim asserted against Mrs. McFarland and her husband was that the lands mentioned above should be· subjected to the payment of plaintiff's debt against Eddleman, because, as alleged by plaintiff, the two deeds executed· by him to his daughter were gifts to her at a time when Eddleman was insolvent, when he owed notes sued on herein and did not then own other property subject to execution sufficient to pay those notes, and the deeds were made in fraud of Eddleman's creditors, including the plaintiff, and were therefore void.

In addition to a general denial, Mrs. McFarland and her husband further alleged a parol gift in 1898 by way of a marriage settlement by Eddleman to Mrs. McFarland of the 4,000 acres described in the first deed, and parol gifts of an undivided half interest in the Christian tract and the Ruland tract, at the respective dates those two tracts were deed to Eddleman & McFarland. They further alleged that immediately after all three of those parol gifts were made Eddleman delivered possession of the respective tracts to Mrs. McFarland, who has been in continuous possession thereof ever since, claiming title thereto under and by virtue of said gifts, and has made valuable and permanent improvements on each of the respective tracts in reliance upon said parol gifts. They also pleaded statute of limitation of 10 years.

Mrs. McFarland and her husband further pleaded a cross-action ‚against plaintiff in which they prayed that Mrs. McFarland be quieted in her title to all those lands as against the claim of plaintiff, which she alleged constitutes a cloud upon her title.

The case was tried before a jury, to whom was submitted special issues, and upon the findings made by the jury, and additional findings of fact by the trial judge, judgment was rendered in plaintiff's favor against W. H. Eddleman for $86,456.76, with foreclosure of attachment liens on several parcels of property other than the lands deeded to Mrs. McFarland. But the judgment further decreed that plaintiff take nothing as against Mrs. McFarland and her husband, and that Mrs. McFarland recover against plaintiff on her cross-action the land described in the two deeds from her father, and that the cloud cast upon her title by plaintiff's claim be removed.

No appeal has been taken by defendant W. H. Eddleman, but plaintiff has appealed from the judgment in favor of Mrs. Carrie E. McFarland and F. H. McFarland.

The following facts were established by uncontroverted proof: Mrs. McFarland, who was the only child of W. H. Eddleman and wife, was married to F. H. McFarland in June, 1898, and on or about September 6, 1898, F. H. McFarland entered into a partnership with W. H. Eddleman to· engage in the cattle business and to use the tract of 4,000 acres for the purpose of grazing, feeding, and raising cattle thereon. Immediately thereafter F. H. McFarland, who was the sole manager of the partnership business during its entire existence, took exclusive possession and charge of the ·land and held possession thereof continuously from; that date up to the time W. H. Eddleman executed the two deeds to Mrs. McFarland in the summer of 1914; the tract being ˋunder fence during that entire period. Immediately after the execution of the two deeds to F. H. McFarland and Eddleman of the Christian tract of 700 acres in 1901 and of the Ruland tract of 400 acres in 1907, those two tracts were included with the 4,000 acres, and all was immediately inclosed under one fence and held as one tract, and the exclusive control and possession of F. H. McFarland of those two additional tracts in conjunction with the 4,000-acre tract began immediately after the respective dates of those two ˙deeds, and continued up to the summer of 1914, when the same were deeded to Mrs. McFarland by her father, said two additional tracts being used in the same manner as the 4,000-acre tract and for the same purpose.

The partnership of McFarland & Eddleman continued from September 6, 1898, up to the time of the execution of the two deeds by Eddleman to his daughter. When those deeds were executed the partnership was dissolved, and F. H. McFarland bought from Eddleman his interest in the assets of the partnership for a cash consideration paid of approximately $25,000, and thereafter continued in possession of all the property in controversy up to the date this suit was instituted, using the land for the same business, but in which he alone was interested.

Special issues submitted to the jury and their findings thereon were as follows:

"No. 1. Did W. H. Eddleman, by verbal gift, give Carrie E. McFarland, in 1898, the lands described in the deed made by said Eddleman to said Carrie E. McFarland dated June 16, 1914?   Answer: Yes.

"No. 2. Did the defendant Carrie E. McFarland take and hold possession of said lands from and after the date of said gift, if you have found that there was a gift? Answer: Yes.

"No. 3. What was the cost of the improvements made upon the lands referred to in issue·No. 1 in the year 1898? Answer: $2,-100.

"No. 4. The evidence shows that whatever improvements were placed on said land in 1898 were paid for with funds belonging to F. H. McFarland and W. H. Eddleman. Now, was the one-half of the cost of such improvements that was contributed to the same by F. H. McFarland paid by him in pursuance of and in re-

liance upon a verbal gift of said lands to his wife by said W. H. Eddleman? Answer: Yes. * * *

"No. 6. What was the reasonable cash value of the use of said lands per acre per year from the time F. H. McFarland went upon and began to use the same? Answer: 30 cents per acre.

"No. 7. Were the lands purchased in 1901, and conveyed to Eddleman and McFarland jointly (same time referred to in the testimony as the Christian lands), so acquired with the agreement and understanding between Eddleman and his daughter and her husband that a half interest in said lands was, as acquired, the property of Carrie E. McFarland? Answer: Yes.

"No. 8. Were the lands which were conveyed to Eddleman and McFarland jointly in 1907 acquired with the agreement and understanding between Eddleman and his daughter and her husband that a half interest in said lands as acquired was the property of Carrie E. McFarland? Answer: Yes.

"No. 9. Did Carrie E. McFarland take and hold possession of said one-half interest in said lands from and after said conveyances 1901 and 1907, respectively, from and after the dates of said conveyances? Answer: Yes. * * *

"No. 14. The evidence shows that whatever improvements were made upon any of said lands subsequent to the year 1898 were paid for out of the profits of the business of McFarland & Co., one half of which profits would in law belong to W. H. Eddleman, and the other half would be the community property of McFarland and his wife. Now, was the one-half of the cost of the improvements that was paid out of the community funds of McFarland and wife paid by them in pursuance of and in reliance upon a verbal agreement between them and W. H. Eddleman that one-half of said lands, when acquired, was to belong to and be the property of Carrie E. McFarland, if you have found that there was such agreement? Answer: Yes.

"No. 15. Were the payments of purchase money on various tracts of land in controversy claimed by Carrie E. McFarland, which were made by F. H. McFarland as shown by the evidence, made by him under and in pursuance of a claim of ownership in said lands by Carrie E. McFarland? Answer: Yes.

"No. 16. If you have answered 'Yes' to the preceding interrogatory, then did said Eddleman, or not recognize and acquiesce in the said claim of ownership of his daughter of said lands, when said payments of purchase money were so made? Answer: Yes.

"No. 17. What was the reasonable cash value per acre per year of the use and occupancy of the lands acquired in 1901, and of the lands acquired in 1907, from and after the respective dates of their acquisition? Answer: 35 cents per acre."

The proof further showed without controversy that the following improvements were made upon the lands in controversy, the costs of which were paid out of the partnership funds of the firm of Eddleman & McFarland, the respective dates the improvements were made and the cost of the same being shown, but the funds so expended in 1898 were out of the capital raised at the beginning of business and one-half of it was the separate means of F. H. McFarland:

| | |
|---|---:|
| V ranch house—built in 1898—value at time | $ 1,250 00 |
| Fences—built 1898—value at time | 300 00 |
| Tubs (3)—1898—value at time | 250 00 |
| Rebuilding barn—1898—value at time | 300 00 |
| Windmill tower and well—1899—value at time | 400 00 |
| Telephone line—1899—value at time | 450 00 |
| Dirt tanks (3)—1899—value at time | 400 00 |
| 2 carloads posts—1900—value at time | 475 00 |
| Seed house (central)—1900—value at time | 750 00 |
| Ranch house, well and mill—1901—value at time | 750 00 |
| Feed troughs (100)—1901—value at time | 700 00 |
| Lee pasture, mill and well—1902—value at time | 600 00 |
| Southeast pasture mill and well—1902—value at time | 550 00 |
| Christian place mill and well—1902—value at time | 550 00 |
| Dirt tanks (2)—1902—value at time | 200 00 |
| Carload post and wire—1902—value at time | 600 00 |
| Horse barn at ranch—1903—value at time | 1,000 00 |
| Dirt tanks (3)—1903—value at time | 350 00 |
| South pasture windmill, etc.—1904—value at time | 450 00 |
| Cement tubs (2)—1904—value at time | 250 00 |
| R. R. spur at McFarland—1904—value at time | 780 00 |
| Tenant house—1904—value at time | 600 00 |
| Cake house at McFarland—1905—value at time | 900 00 |
| Cement storm house at ranch—1905—value at time | 400 00 |
| Feed troughs (100)—1905—value at time | 700 00 |
| Telephone line to Fort Worth—1906—value at time | 600 00 |
| Addition to tenant home built—1907—value at time | 300 00 |
| Ruland tenant home, etc.—1907—value at time | 750 00 |
| Ruland well and windmill—1907—value at time | 525 00 |
| Cement tubs (4)—1907—value at time | 500 00 |
| Corral and pens at ranch—built 1908—value at time | 500 00 |
| Addition R. R. spur—built 1908—value at time | 150 00 |
| Lee barn and seed house—built 1908—value at time | 1,000 00 |
| Roads and bridges—built 1908—value at time | 350 00 |
| East pasture new well and mill—1908—value at time | 600 00 |
| Christian place home remodeled—1908—value at time | 400 00 |
| Addition to V Ranch home—built 1908—value at time | 250 00 |
| Cow barn and seed house—built 1911—value at time | 1,000 00 |
| Outhouses—built 1911—value at time | 250 00 |
| Wire and posts—built 1911—value at time | 600 00 |
| Water tower and cement tubs, walk home—1911—value at time | 900 00 |
| Cement tubs east and Lee mill (2)—1911—value at time | 400 00 |
| Ruland barn—1912—value at time | 400 00 |
| Car lumber for gates and repair—1912—value at time | 300 00 |
| Addition to Ruland home—1912—value at time | 300 00 |
| Tubs and repairs at Christian home—1913—value at time | 125 00 |
| Rebuilding Lee mill—1914—value at time | 150 00 |
| Dipping vats and pens—1914—value at time | 500 00 |
| Carload post and wire—1914—value at time | 600 00 |
| Building 2 miles fence—1914—value at time | 250 00 |
| Shipping pens at McFarland—1914—value at time | 1,000 00 |
| Cement tubs (4)—1914—value at time | 600 00 |
| Total | $27,255 00 |

The trial judge also filed findings of facts, and one of the facts so found was that at the dates of the respective deeds made by Eddleman to his daughter in the year 1914 he did not retain property in this state subject to execution sufficient to pay all the debts he then owed.

By one assignment appellant insists that the court erred in submitting special issue No. 1 because the evidence was not sufficient to sustain a finding that Eddleman made a verbal gift to his daughter of the tract of 4,000 acres in the year 1898. By another assignment it is insisted that the verdict of the jury on that issue is without sufficient evidence to support it. Another assignment of error reads as follows:

"The court erred in refusing to give special charge No. 1, requested by plaintiff, as follows: 'You are instructed that the evidence in this case is not sufficient to authorize you to find that W. H. Eddleman made a valid, verbal gift to the defendant Mrs. Carrie E. McFarland previous to the deeds of June 16, 1914, and July 16, 1914'—because: (1) The evidence was not sufficient to sustain a finding by the jury that Eddleman made a present, absolute, executed gift to Mrs. McFarland; (2) the evidence was not sufficient to sustain a finding by the jury that Mrs. McFarland took and held actual and exclusive possession of the land in pursuance of, and reliance upon, a gift thereof by Mr. Eddleman to her; (3) the evidence was not sufficient to sustain a finding by the jury that Mrs. McFarland either with her separate property or with community property of herself and husband made permanent and valuable improvement upon the land in pursuance of, or reliance upon, a gift thereof from Eddleman to her, which exceeded in value at the time they were made the value of the use of the land to that time."

Appellant has cited the case of Murphy v. Stell, 43 Tex. 123, from which the following is quoted with reference to a parol gift of land:

"The party setting up such promise must be able to establish it by full, clear, and satisfactory evidence. Its term and conditions must be clear and free from all ambiguity and doubt. It must also appear that possession has been taken, and the improvement made upon the faith of it. Permissive occupation by the father and mere expectation of a gift by the son will not bring the case within the rule."

Several other authorities are cited which contain announcements substantially to the same effect as that quoted, such as Combest v. Wall, 102 S. W. 147; Martin v. Martin, 207 S. W. 189; Snover v. Jones, 172 S. W. 1123; Edwards v. Norton, 48 Tex. 291; Meurin v. Kopplin, 100 S. W. 984; Zallmanzig v. Zallmanzig, 24 S. W. 944; Doyle v. First National Bank of Wamego, 50 S. W. 480; 36 Cyc. 689, 691. Those authorities are cited to support the contention that the proof was insufficient to show any of the necessary elements of a valid and enforceable gift of the property, and specially the alleged gift of 4,000 acres.

In addition to facts already related, we shall attempt to state the substance of only the most potent evidence bearing on the issue of the alleged gift.

Mrs. McFarland testified specifically and unqualifiedly to the following effect: Either the day before or the day after her marriage her father told her that he wanted to give her the 4,000-acre tract and wanted her husband to take charge of it because it was her property. Immediately after her marriage she and her husband took a bridal trip of about six weeks duration, and during her absence from home on that trip her father wrote to her saying that property belonged to her and it was his wish that her husband take charge of it and go into the cattle business with him (Eddleman). After her return home with her husband, and on or about September 6, 1898, the partnership of McFarland & Eddleman was formed for the purpose of engaging in the cattle business on that tract, each member putting in the same amount of money, and her husband putting in his services, and each sharing one-half of the profits; and immediately thereafter she and her husband took possession of the property, and continuously from that date until the date of her father's deeds to her he was in the exclusive charge and control of the property, using the same chiefly for feeding steers and raising cattle. During that time witness herself had some cattle on the place which were fed and cared for without charge to her along with the cattle of McFarland & Eddleman. On account of long-protracted ill health, and at the earnest request of her parents, she spent most of her time with them in their home in Weatherford, some 14 miles distant from the ranch, and in their home in Fort Worth after they moved to that city in the year 1905. Some of her time was spent on the ranch, but she never had a regularly established home there. She never acquired any other home elsewhere. In 1901, when the Christian tract was purchased by McFarland & Eddleman, Eddleman told witness and her husband that the interest in that land conveyed to him should belong to witness, and that the purchase was made with that understanding. When the Ruland tract was purchased, Eddleman made the same statement with respect to the half conveyed to him in that tract, and when each of those tracts was purchased F. H. McFarland took possession of it and held possession continuously thereafter in the same manner as he held possession of the 4,000-acre tract. Throughout the existence of the partnership of McFarland & Eddleman her husband had exclusive possession and control of the entire ranch and made all the improvements thereon upon his own and exclusive judgment; her father repeatedly stating to him that he would take no part in

those matters, since the property belonged to his daughter, Mrs. McFarland. During that entire period her father repeatedly and always in his home and in the presence of witness, her mother and her husband, spoke of the ranch as the property of his daughter. Witness never heard that her father was in any financial straits until about one year after he executed the two deeds to her, and never before then suspected such a condition. At the time of the execution of those deeds the husband of witness was contemplating engaging in another business in the state of Tennessee, when her father suggested a dissolution of the partnership between himself and McFarland, and as an incident thereto he suggested the execution of those deeds to show title of record in his daughter to those lands. About one year after their execution witness, joined by her husband, executed a mortgage on all that property to secure an indebtedness of W. H. Eddleman in the sum of $40,000, and about $39,000 of that debt is still unpaid. That mortgage was executed at the request of W. H. Eddleman to help him out of his financial difficulties.

F. H. McFarland, W. H. Eddleman, and his wife, Mrs. Sarah Eddleman, each testified substantially to the same facts related above, and several witnesses testified that on different occasions which were prior to the execution of the two deeds Eddleman spoke of the property in controversy as the property of his daughter, or as belonging to her and her husband. In addition to all that testimony, Mr. and Mrs. McFarland each testified that all the improvements placed on the property were so made upon the faith of and in reliance upon the parol gifts made by W. H. Eddleman to his daughter as testified to. F. H. McFarland further testified that after he took charge of the 4,000-acre tract he paid off two incumbrances which were against it before the formation of the partnership, one for about $2,800, and one for about $1,600 or $1,800; that those two payments were made in the year 1899 out of the partnership funds of McFarland & Eddleman, but that Eddleman reimbursed him for one-half of the smaller debt. McFarland further testified to the effect that Eddleman stated he wished to pay off those incumbrances for the benefit of his daughter, to whom he had given the property. The proof showed that neither Eddleman nor Mrs. McFarland made any claim against the partnership for rents on the land; that about the dates of the several alleged gifts Eddleman was a rich man; and that his financial difficulties were occasioned by his suretyship on obligations of others in large sums contracted long after those dates. The uncontroverted proof showed further that the purchase price of the Christian tract was approximately $5,600, all of which was paid by McFarland out of his individual funds except $400 which was paid out of the partnership funds of McFarland & Eddleman, and that McFarland paid the entire purchase price of the Ruland tract out of his own individual money, amounting to more than $5,000, and further that the reasonable market value of the 4,000-acre tract at the time of its alleged gift to Mrs. McFarland was approximately $10 per acre.

Opposed to that evidence was proof of allegations made by plaintiff in a suit instituted in the year 1899 by McFarland & Eddleman against a railroad company for damages for grass burned on the 4,000-acre tract to the effect that the partnership firm was a lessee of the land and entitled to recover the value of the grass, and W. H. Eddleman was owner of the fee and entitled to recover damages for injury to the turf. There was also proof that in the year 1913 W. H. Eddleman made an affidavit in which he listed as property owned by him a large number of surveys of land, aggregating 10,500 acres situated in Parker county and including the property in controversy; that affidavit being made to qualify him as a surety on a bond given by the Western National Bank of Fort Worth, of which he was president, to Tarrant county, to the end that the bank might be selected by the commissioners' court as the official depository of the funds of the county. Plaintiff also introduced the testimony of J. R. Jarboe, representative of the R. G. Dun Company, a commercial agency, to the effect that on February 13, 1914, in order to get a record of W. H. Eddleman's financial rating, witness applied to him for a statement showing what property he owned, and on that date Eddleman furnished him with a written statement showing that he owned about 13,000 acres of land situated in Parker county, which evidently included the land in controversy. However, as his reason for listing the land as his own in his sworn statement made to the commissioners' court of Tarrant county, Eddleman testified that he disliked to ask many to make the bond; that his family were large stockholders in the depository bank, and he thought there would be no liability on the bond nohow, which proved later to be true. And McFarland testified that the verified statement so made by Eddleman was known to himself and his wife at the time it was made, and that they did not object to it because they were anxious to help the bank in its business. And F. H. McFarland and W. H. Eddleman each testified in effect that he did not know of the allegations in the petition in the suit against the railroad company mentioned above that an attorney was employed to institute the suit for damages, and witness did not know just how he came to make those specific allegations.

During the existence of the partnership business of McFarland & Eddleman that partnership paid no rents to either W. H. Eddleman or Mrs. McFarland, and was

charged none; and the two members of the partnership were equally interested in the profits of the partnership venture. During the period beginning with the date of the marriage of his daughter up to the time he executed the two deeds to her in the year 1914 Eddleman rendered all the property in controversy for taxes in his own name and paid all taxes assessed against it with his own funds.

That evidence, in connection with Eddleman's failure to execute the deeds sooner, of course, tended to disprove the allegation of parol gifts, and some, of it tended to discredit the testimony of Mrs. McFarland and her husband as well as that of her father; but the same was not conclusive, and does not necessarily overcome the proof of gifts offered in behalf of Mrs. McFarland. Furthermore, the claim of ownership by Eddleman in the two written statements, one to the commissioners of Tarrant county, and one to R. G. Dun Company, were made in the year 1913; and his claim of ownership then could not have the effect to destroy or annul the parol gifts, if any, theretofore made.

[1] To require proof of a fact by "full and satisfactory" evidence is equivalent to a requirement that the fact must be proved beyond a reasonable doubt. Baines v. Ullmann, 71 Tex. 529, 9 S. W. 545. And instructions to juries using such language have often been condemned by the courts of this state. See Sparks v. Dawson, 47 Tex. 138; Moore v. Stone, 36 S. W. 909, and many cases there cited, in some of which instructions of that character, given relative to the proof of fraud, were held erroneous, notwithstanding the statement usually made by the authorities to the effect that proof of fraud must be "clear and satisfactory," or words to that effect. 2 Black on Rescission and Cancellation, § 683.

[2] When a parol gift of land is claimed, from the very nature of such a transaction parol testimony relative to what was said may be uncertain and indefinite with respect to whether the alleged donor intended a present gift, or merely promised to make one at some future time, and for that reason must be carefully considered. The announcements contained in the authorities cited to the same purport as the quotation from Murphy v. Stell, 43 Tex. 123, were perhaps intended to emphasize the necessity of definite proof of the necessary elements of a gift as distinguished from a promise to make one in the future, just as a deed of conveyance must use language sufficiently definite and certain to convey title. And in all the cases cited by appellant in which alleged gifts were rejected the evidence offered fell far short of that requirement. But, if the proof meets with that requirement with reasonable certainty, we perceive no

reason why such a gift may not be established by a fair preponderance of the evidence, just as in any other civil action; and we are of the opinion that Mrs. McFarland discharged that burden of proof in the present suit. Field v. Field, 39 Tex. Civ. App. 1, 87 S. W. 729; Wootters v. Hale, 83 Tex. 563, 19 S. W. 134; Neale v. Neale, 9 Wall. 8, 19 L. Ed. 590.

W. H. Eddleman testified in part as follows:

"I considered that I gave the land, to my daughter when I told her I would. I gave it to her on condition that McFarland would go ahead down there and take care of the place, and he did. He went ahead and took charge of the place, run the cattle there just as we agreed on, feeding on the partnership."

[3] Appellant insists that this testimony, considered in connection with the fact that prior to his marriage McFarland had been to some extent a rover, and the further fact, as shown by other evidence, that Eddleman and wife and Mrs. McFarland all were anxious that Mrs. McFarland should not, after her marriage, live at some place remote from her father's home, conclusively refuted the contention of a definite executed gift. With this contention we do not agree. The testimony of Mrs. McFarland and her husband and other testimony of W. H. Eddleman was to the effect that the gift was made unconditionally. Besides, if the gift was made on the condition mentioned, the proof showed conclusively that the condition was fully performed, and in addition thereto possession was taken and valuable improvements made upon the faith of the gift. While the payment of taxes on the land by Eddleman, after dates of the alleged gifts was a circumstance tending to refute the allegation of gifts, yet it was not conclusive. Baker v. De Freese, 2 Tex. Civ. App. 524, 21 S. W. 963; Patterson v. Patterson, 27 S. W. 837.

[4, 5] Possession of the property taken and held by F. H. McFarland for and in behalf of his wife in reliance upon the prior parol gift was sufficient, especially as that possession was shared in part by Mrs. McFarland in person, and since W. H. Eddleman, during the entire period of possession, recognized ownership of the land in his daughter, according to testimony introduced by the McFarlands. The conduct of the business of the partnership on the premises, under all the circumstances proved, was not necessarily a denial of the right of possession in Mrs. McFarland through her husband, but was entirely consistent with the recognition of that right by both the partners, as shown by evidence. Patterson v. Patterson, 27 S. W. 837; Lutcher v. Grant, 143 S. W. 1190. In the case of Warren v. Warren, 105 Ill. 568, a daughter was awarded judgment for specific enforcement of a

parol contract by her father to give her certain real estate if she would live with and care for him. The father and daughter lived together on the property until his death, after which the suit was instituted; yet the court held that her possession was sufficient to take the cause out of the operation of the statute of frauds; and in reaching that conclusion said this of the daughter's possession:

"Her father recognized her as owner, and their relations implied the possession was hers, and he lived with her."

Likewise, in Patterson v. Patterson, supra, in which a writ of error was denied, and in which a parol gift of land was sustained, the court said:

"Possession of the property is essential in order for the gift to ripen into title; and, while it is true that appellee was not in exclusive possession of the property during the lifetime of W. T. Patterson, she was in possession as his servant, and was in such possession as was contemplated by him as sufficient to protect her interest and right as a donee. Her ownership and possession was by him recognized and admitted during his lifetime; and, although her possession was not exclusive, or dominion of the property absolute, it was evidently so intended and considered by both that her possession and present right of enjoyment of the property was equal to that of Patterson."

[6] Furthermore, if F. H. McFarland had owned the land before his marriage, and, in order to utilize it to the best advantage for the support of himself and wife after their marriage, had decided to raise and feed cattle on it, and Eddleman, a banker engaged in another business and residing 14 miles distant, had agreed to a partnership with him by the terms of which each member was to furnish one-half of the capital and to take one-half of the profits, but that McFarland should have the sole and exclusive management of the business, and if the terms of that agreement had been strictly complied with, then under such circumstances it would be unreasonable to say that Eddleman had been in adverse possession of the land itself. The fact that F. H. McFarland, under his statutory right of control for his wife, took charge and possession of the land as the property of his wife, and used it for the same purpose and under the same conditions, does not call for a different conclusion upon the issue of possession by himself or by Eddleman, especially as the possession, if any, of Eddleman was solely through McFarland, as the manager of the partnership business, and since, so far as the issues in this suit are involved, the partnership had no separate legal entity, such as a corporation possesses. Frank v. Tatum, 87 Tex. 204, 25 S. W. 409.

In Ann Berta Lodge v. Leverton, 42 Tex. 18, specific enforcement of a parol sale of land was denied for lack of sufficient improvements made by the vendee. It appeared that practically all the improvements were made out of rents from the property after the vendor had repudiated the parol contract of sale, and, after noting that fact, the court said:

"It is well settled, when the purchaser has been fully compensated for his improvements, or has gained more by his possession than he has expended in improvements, they will not avail him as a ground for specific execution."

In several cases since that decision was rendered it has been cited as supporting the general proposition that in such cases the cost of improvements must bear some reasonable proportion to the value of rents; a conclusion which we do not believe is warranted by that decision, the keynote of which seems to have been expressed in the following language used:

"The purchaser cannot, with any show of equity, ask a specific performance of the contract merely by reason of improvements, after he is advised that the contract is repudiated and will not be carried out by the other party."

However, at all events, such a doctrine was rejected by our Supreme Court in Wells v. Davis, 77 Tex. 636, 14 S. W. 237, in which, after citing Ann Berta Lodge v. Leverton and other decisions following it, it said:

"To hold in such cases that the purchaser under a parol sale or gift must be held to account for the value of the use and occupation of the premises is to treat him as a renter or trespasser instead of as a purchaser, and is inconsistent with the theory upon which specific performance has been decreed in such cases."

[7] That announcement has been expressly approved by the same court in the recent case of Hudgins v. Thompson, 109 Tex. 433, 211 S. W. 586, and under those decisions we overrule appellant's contention that the improvements made out of F. H. McFarland's half of partnership funds, which were community funds of himself and wife in part, and in part out of his separate means, were not sufficient, because, as contended further, the reasonable value of rentals, especially of the 4,000-acre tract, up to the time the improvements were made exceeded the value of such improvements. In this connection it is to be noted that the rentals of that tract up to the time the first improvements were made did not equal one-half the cost of those improvements. Furthermore, the evidence was sufficient to support a finding that Eddleman intended that his half of the partnership funds expended for improvements, and which became a part of the realty, should be so used for his daughter's benefit and by way of gift to her. Burk v. Turner, 79 Tex. 276, 15 S. W. 256.

Appellant has assigned error to the refusal

of the trial court to submit to the jury the following requested instruction:

"In deciding whether W. H. Eddleman made a valid, verbal gift of the land in question to Mrs. McFarland, previous to the deeds of June 16, 1914, and July 16, 1914, you are instructed that, to constitute such a gift, it is necessary: First, that by the terms thereof all right in and control over the land must have been finally and definitely relinquished by Mr. Eddleman to Mrs. McFarland. An understanding between them that the land was intended to belong to Mrs. McFarland on condition that she and her husband remain in Texas, or upon any other condition, would not be sufficient. The gift must have been a present, completed one, only lacking the making of a deed in writing. Second, Mrs. McFarland must have taken exclusive possession of said land as her own in pursuance of such gift. Possession taken by a partnership composed of her husband and W. H. Eddleman would not be sufficient. Third, in reliance upon gift and after taking such possession, Mrs. McFarland must have made upon said land permanent and valuable improvements exceeding the value of the use of the land to the time the improvements were made."

[8] For the reasons noted above, we believe the statement in the requested instruction that "possession taken by a partnership composed of her husband and W. H. Eddleman would not be sufficient" would have been misleading to say the least, and would have been erroneously prejudicial to Mrs. McFarland. And the same may be said of the further portion of the requested instructions to the effect that an understanding between Mrs. McFarland and her father that the land was given to her "on condition that she and her husband remain in Texas, or upon any other condition, would not be sufficient" to constitute a gift of any of the three tracts in controversy. And it may be noted in this connection that the testimony relied on by appellant to show such a conditional gift related solely to the 4,000-acre tract, which was claimed under the alleged gift made in 1898, and not to the Christian tract, nor the Ruland tract, the first of which was not acquired by Eddleman & McFarland until the year 1901, and the second until 1907.

[9] Mrs. Sarah E. Eddleman testified to declarations made by W. H. Eddleman, her husband, during the year 1898 to the effect that he had given the 4,000-acre tract to his daughter. Tom Patillo testified to a declaration made to him by Eddleman during the fall of 1898 to the effect that the same land belonged to his daughter, Mrs. McFarland. R. B. Young testified to a like declaration by Eddleman made to him in 1911, and Jim Armstrong testified to a declaration of like import made to him by Eddleman in 1904 or 1905. Several assignments have been addressed to the admission of all that testimony over the objections by appellant substantially to the effect that it was hear-say and self-serving. All those assignments are grouped, and the following is the only proposition submitted thereunder:

"The statements of the donor made to a third person, in the absence of the donee, after it is claimed that the alleged gift has been made, are not admissible in support of the gift against an attacking creditor."

Appellant has cited Johnston v. Spoonheim, 19 N. D. 191, 123 N. W. 830, 41 L. R. A. (N. S.) 1. In that suit an attack was made on a deed to a farm made by father and mother to their son while the father was greatly involved financially; the expressed consideration recited in the deed being $1. The attack was made by a creditor of the father on the ground that the deed was made for the purpose of defrauding his creditors. Testimony of the notary who took the acknowledgment of the grantors to the deed was to declarations made by them at the time to the effect that the conveyance was made in payment of a debt they justly owed the son. The Supreme Court of North Dakota held that such testimony was not admissible because it was hearsay, and because the alleged declarations were made under circumstances indicating a possible motive on the part of the grantors to manufacture evidence. In some of the decisions cited in a note to that decision it was held that under the res gestæ rule contemporaneous parol declarations showing good faith of the grantors in making a deed while insolvent, and which deed is attacked as fraudulent, are admissible; while others hold to the contrary.

In Lord v. N. Y. Life Ins. Co., 95 Tex. 221, 66 S. W. 290, 56 L. R. A. 596, 93 Am. St. Rep. 827, it was held that a gift could be proven by declarations of the donor on the theory that they were against the interest of the donor. And gifts were upheld largely by proof of such declarations in the following cases, although it does not seem that objections were made to such evidence: Neale v. Neale, 9 Wall. 1, 19 L. Ed. 590; Baker v. De Freese, 2 Tex. Civ. App. 524, 21 S. W. 963.

The written statements made by Eddleman in 1913, in which he claimed the property in controversy as his own, were introduced by appellant, and the same tended to impeach his testimony on the trial in behalf of his daughter. Under such circumstances, the declarations made to the four witnesses named were admissible not only because they were against interest, but also to corroborate his testimony upon the trial, since it conclusively appears that at the time they were made he had no possible motive to fabricate. In this connection it is to be noted that no contention has been presented that Eddleman was insolvent when they were made, or at any time prior to the year 1914.

In the case of Ætna Insurance Co. v. Eastman, 95 Tex. 34, 64 S. W. 863, Chief Justice Gaines for our Supreme Court said:

"Upon the subject of admitting the testimony of the former declarations of a witness in support of his testimony given upon the trial, there is a great contrariety of opinion as to the circumstances which render such admission proper. But two rules are reasonably well established: (1) That, in the absence of evidence impeaching the credibility of a witness, such testimony is never admissible. Moody v. Gardner, 42 Tex. 414. (2) That whenever a witness is sought to be impeached by showing that he has made declarations inconsistent with the testimony given by him upon the trial, and the tendency of such impeaching evidence is to show that the testimony of the witness is, by reason of some motive existing at the time of the trial or of some influence then operating upon him, fabricated, it is proper to admit evidence of his former declarations which corroborate his testimony, provided such declarations were made at a time when no such motive or influence existed. Lewy v. Fischl, 65 Tex. 311; Commonwealth v. Jenkins. 10 Gray, 489; State v. Flint, 60 Vt. 304; Barkly v. Copeland, 74 Cal. 1."

[10] If there was error in admitting testimony of F. H. McFarland and Mrs. Eddleman that there was a general understanding in W. H. Eddleman's family that he had given the property to his daughter, the error was harmless, since each and every member of the family testified positively to the effect that such was his or her understanding and the testimony of Mrs. Eddleman and her daughter and F. H. McFarland was all based on repeated declarations of Eddleman, in the presence of his family, that the property belonged to his daughter.

For the reasons noted, all of appellant's assignments of error are overruled, and the judgment of the trial court in favor of Mrs. McFarland and her husband is affirmed, without a determination of cross-assignments presented by the McFarlands to the finding made by the trial judge that Eddleman was insolvent when he executed the two deeds to his daughter; the error assigned to that finding being that it is not supported by the evidence and contrary to the undisputed proof.

The judgment against W. H. Eddleman, from which no appeal was taken, is undisturbed.

### On Motion for Rehearing.

Appellant insists that what we said in overruling the assignments complaining of the admission of the testimony of Mrs. Eddleman, R. B. Young, Jim Armstrong, and Tom Patillo, relative to certain statements made by W. H. Eddleman to the effect that the land in controversy belonged to Mrs. McFarland is misleading, in that it implies that such testimony was introduced after plaintiff had introduced the affidavit made by Eddleman to the Tarrant county commissioners, the pleadings in the suit by Eddleman and McFarland against the railroad company for grass burned, and the statement made by Eddleman to Jarboe, representing the Dun Commercial Agency.

We have again carefully examined the statement of facts, which shows the following: Mrs. McFarland was the first witness introduced by defendants, and during her direct examination by her counsel she testified, in substance, that ever since her husband took charge of the land he has had exclusive control and charge of it; that until this suit was filed she had never heard of any claim of right in the property by any creditor or any one else; that during all that period she had claimed ownership of the property, and her claim of title had never been questioned by any one, within her knowledge. Following her testimony to that effect she further testified as follows:

"I never knew, or was it ever brought to my attention until after this suit was brought, of any alleged statements by my father with respect to the ownership in him of these lands, as contradistinguished from my ownership; never heard of anything of that kind until after this suit was brought. I have heard something of that sort since. I never authorized my father to make any statement of ownership of this land in him at any time during all these years. I do not see any occasion for any person to have been deceived. As far as I know, we made no statements about the ownership of the land; and there is nothing in the occupancy or use of the land or residence or control over it during all this time that would advertise ownership in my father. I can think of no occasion or anything that was inconsistent with my claim of ownership."

On cross-examination counsel for plaintiff then interrogated her specifically about the allegations contained in the suit against the railroad company for burning grass on the land, also about the statements made by W. H. Eddleman to the Commercial Agency, the payment of taxes by him, and the statements contained in his affidavit made to the Tarrant county commissioners to the effect that he owned the land in controversy. And, in answer to that cross-examination, witness denied any knowledge of those documents or transactions prior to the institution of this suit. That cross-examination and those answers thereto constituted the first specific reference to any of those documents.

F. H. McFarland was the next witness introduced by defendants, and on direct examination by them he was asked for an explanation of the pleadings in the suit against the railroad company for damages for grass burned, and he then gave his explanation as to that. But during this direct examination by defendants he was not interrogated at all relative to the affidavit of Eddleman to the Tarrant county commissioners. During cross-examination of this witness by

the plaintiff, there was introduced in evidence and read to the jury the affidavit of Eddleman to the county commissioners, and one by F. H. McFarland himself touching the same subject, the pleadings in the suit against the railroad company, and McFarland interrogated about all those documents, and also concerning Eddleman's written statement to the Commercial Agency.

Eddleman did not go on the witness stand until after the introduction in evidence of all those documents, except the statement to the Commercial Agency. When he did take the stand he was cross-examined by plaintiff relative to all those documents, including the statement to the Commercial Agency.

Neither Mrs. Eddleman nor R. B. Young nor Jim Armstrong nor Tom Patillo testified at all until after all those documents were introduced in evidence, except the one to the Commercial Agency and after the examination of the witnesses above mentioned relative thereto. And the statement to the Commercial Agency was introduced by plaintiff after those four witnesses had testified.

It thus appears that plaintiff alone was responsible for the introduction of all those documents, and that one of the purposes, if not the sole proper purpose, was to discredit the testimony of witnesses for defendants, and chiefly that of W. H. Eddleman, while F. H. McFarland did testify on his first examination that his wife knew of the affidavit made by her father to the Tarrant county commissioners at the time it was made, and did not object thereto because she was anxious to help the bank, as noted in our original opinion, yet, when recalled to the stand, the witness withdrew that statement, saying that after refreshing his memory he found that he had made a mistake, and further testified that Mrs. McFarland knew nothing about that affidavit made by her father. Mrs. McFarland herself denied knowledge of it also and no other witness testified to the contrary except her husband on his first examination, as above noted.

Under such circumstances, we think it clear that the testimony of Mrs. Eddleman, R. B. Young, Jim Armstrong, and Tom Patillo, the admission of which was assigned as error, was admissible under the rule announced in Ætna Insurance Co. v. Eastman, 95 Tex. 34, 64 S. W. 863, cited in our original opinion.

[11] We are of opinion further that such proof of admissions by Eddleman of title to the land in his daughter was admissible for the further reason that it properly tended to support Mrs. McFarland's plea of title under the statute of 10-year limitation, since it clearly tended to explain the character of possession of the partnership of McFarland and Eddleman. Warren v. Frederichs, 83 Tex. 380, 18 S. W. 750; Chew v. Jackson, 45 Tex. Civ. App. 656, 102 S. W. 427; 2 Corpus Juris, p. 271, § 608.

[12] Furthermore, the record shows that the two notes sued on herein were dated June 29, 1915, and that they were renewals of two series of original notes all signed by W. H. Eddleman and others, one series being 20 in number, each for the sum of $5,-000, with interest from date, all dated June 15, 1914, the other series being seven in number, each for $5,000, with interest from date, all dated April 1, 1910. Plaintiff's claim of a creditor's lien on the property was through W. H. Eddleman as owner of the title. If Mrs. McFarland acquired title by gift or by statute of limitation of 10 years, such title was complete prior to the inception of any part of plaintiff's debt, except that title to the Ruland tract by limitation was not then complete. No contention is made that when the several declarations were made by Eddleman which were testified to by Mrs. Eddleman R. B. Young, Jim Armstrong, and Tom Patillo, Eddleman was then insolvent; indeed, the evidence shows practically without dispute that on those dates he was not only solvent, but was a rich man. If he was not then insolvent, of course, plaintiff had no creditor's lien on the land, even if he then owned it; and, as plaintiff's claim asserted in this suit was through him, declarations now under discussion were admissible against plaintiff because against Eddleman's interest at the time he made them. Titus v. Johnson, 50 Tex. 242; Snow v. Starr, 75 Tex. 416, 12 S. W. 673; Hancock v. Tram Lumber Co., 65 Tex. 233; Matador Land & Cattle Co. v. Cooper, 39 Tex. Civ. App. 99, 87 S. W. 237.

In addition to the conclusions expressed in opinion on original hearing, we will say further that Mrs. McFarland, joined by her husband, also claimed title under and by virtue of the statute of limitation of 10 years which they specially pleaded. Special issue No. 2, quoted in full, was as follows:

"Did the defendant Carrie E. McFarland take and hold possession of said lands from and after the date of said gift if you have found that there was a gift?

"If you find and believe from a preponderance of the evidence that F. H. McFarland, in person or by tenants or employees, took possession of said lands, and held and exercised exclusive care, control, and management thereof, as the property of his wife, and in pursuance of and in reliance upon a gift of the same to her by W. H. Eddleman, if you find such gift was made, you will answer said issue No. 2 in the affirmative. But, unless you do so find from a preponderance of the evidence, or if you believe from the evidence that F. H. McFarland went into possession of said land and held the same as a member of the partnership of McFarland & Co. under and by virtue of an agreement between him and W. H. Eddleman whereby he was to take possession of said lands, and occupy, use, and control the same in conducting the business of said partnership, in either such event your answer to said issue No. 2 should be in the negative."

[13] And the findings of the jury in the affirmative in answer to special issues Nos. 1 and 2, which were supported by the evidence, fully sustained that defense as to all the land in controversy, except the Ruland tract, as to which there can be no doubt plaintiff could not recover, since F. H. McFarland paid all the purchase money for it, and Eddleman's title to one-half interest in it was, in fact, no title at all, and hence not subject to plaintiff's suit, instituted after its conveyance to Mrs. McFarland. And the judgment of the trial court can be supported for that reason, even though it should be said that it cannot be supported on the claim of parol gift. Roemer v. Meyer (Sup.) 17 S. W. 597; Lutcher v. Grant, 143 S. W. 1191.

In the partnership transactions between McFarland and Eddleman, the former made no charge for his services for managing the business; nor did Eddleman make any lease of the land in controversy either in writing or in parol, to the partnership. This statement is added to avoid any possible inference of facts to the contrary from what was said in the original opinion.

The motion for rehearing is overruled.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes