Margaret G. Lord v. New York Life Insurance Company.

No. 1063.   Decided February, 3, 1902.

**1.—Gift—Delivery—Evidence—Declarations.**

Declarations by a decedent are competent evidence to prove the delivery, as well as the gift, to a relative, of a policy of insurance payable to personal representatives. (Pp. 219-221.)

**2.—Same.**

Since a gift was not complete without delivery, declarations of decedent that he had given a certain insurance policy to his sister could be considered by the jury as evidence of delivery, and support a finding thereof. Chevallier v. Wilson, 1 Texas, 160, distinguished. (Pp. 221, 222.)

Certificate of dissent from the Court of Civil Appeals for the First District, in an appeal from Galveston County.

*M. H. Royston (Kleberg & Neethe,* of counsel*),* for appellant.—It would seem clear beyond controversy that there is no evidence which shows a delivery of the policy. In fact there is no evidence that Richard Lord ever gave this policy to his sister. To Mrs. McCellan, he said "that he was going to provide by insurance for his sister, and that he had this policy for her." To Anderson he said, in handing him the sealed envelope, "in this is a policy for my sister Kate." To Green, he said "this policy is Katie's." To Irwin, he said "he had some insurance for his sister Katie." To Vidor, he said "that he had a policy for the benefit of his sister." These declarations of Richard Lord, made in the face of the written declaration of the policy itself, which he well knew, and by which it belonged to him or his estate, can only be interpreted to mean that he intended this policy or its proceeds for his sister Kate. He was a business man of rare capacity, acquainted with the contract of insurance, knew he could place the title of this policy in his sister by having it made payable to her, or by passing it to her by written assignment, or by delivering it to her, and so divesting himself of his own title, and of his dominion and control over the contract. There is no evidence that he ever made an attempt to adopt either of the three methods by which a gift of the policy could have been made to his sister. It is plain, therefore, that the evidence does not imply a delivery as contended by the majority of the Court of Civil Appeals, but that it implies exactly what it says, "that he intended this policy for his sister Kate;" an intention that was never carried out. At all times there remained in Richard Lord full dominion over this policy. He could have pledged it as collateral for loan. He could

have sold it outright any day for its cash value, because such was his privilege under the terms of the policy. Either mode of disposition would have completely transferred the title of the policy, without any power or authority in his sister Kate to prevent it. In other words, there was always for Richard Lord a locus penitentiae at which he might have and could have changed his intention to give this policy to his sister.

Now, it is conceded by every authority upon the subject of gifts inter vivos, that in order to perfect a gift the donor must divest himself of the dominion, title, and control over the subject of his donation, and place such dominion, control, and title in the donee. It is needless to say, according to this test, which is plain and definite, that no gift of the policy in question was ever made to Kate Lord. And right here it is appropriate to say that by the agreement of the great weight of authority, the admissions and declarations of the donor will not alone be sufficient evidence of a gift unaccompanied by an actual delivery. How then can the court imply a corporeal delivery· of an instrument from declarations expressive of intention only? There may be a symbolical delivery or a constructive delivery, and these modes of delivery are usually resorted to when the subject of gift is not susceptible to a better or more perfect delivery, or when the donor is placed in such an attitude towards the subject of his gift as to make an actual delivery impossible. But we do not see how the majority of the court, as in the case at bar, can imagine from the facts as they are presented in the record, an implied, symbolical, or constructive delivery; the evidence does not present a single substantive fact showing a delivery of any sort; the policy was in the possession of the donor from the day of its execution up to the time of his death; he never, at any time, delivered it to his sister or delivered it to any one else for his sister; and the only instance in which he parted with the actual possession of the policy he gave it to a friend for safe keeping to be returned to him whenever he called for it, and it was so done. Was there any course of conduct possible to demonstrate more clearly nondelivery than the one which Richard Lord pursued? He carefully avoided every act of delivery, constructive, symbolical, or implied, by making the policy payable to himself or his estate, by failing to make an assignment in writing to his sister, by declining and failing to deliver the policy itself to his sister, and finally when he made his will and the opportunity to bequeath this policy to his sister was before him, and when a man of his capacity must have known that, in order to insure this policy or its proceeds to his sister, it was only necessary for him to say, in making a disposition of his property, "all my property I leave and bequeath to my wife, Margaret, except my policy for $10,000 in the New York Life Insurance Company, which goes to my sister Kate," he did not do so.

In this connection we can not refrain from quoting from the learned

opinion of Chief Justice Hemphill in Chevalier v. Wilson, 1 Texas. * * * "The most solemn declarations that she had given would not: be evidence of a gift, where she did not, for a single instance, relin-- quish dominion of the property, and where it was not vested in the donee by delivery, actual or constructive."

In this connection, we desire further to remind the court of a rule: of law of universal recognition, which requires that in case of a gift inter vivos or causa mortis the evidence of delivery must be clear, free of doubt, and satisfactory. The reason for this rule rests in the sound-- est wisdom. In nearly every case the gift is claimed after the donor is. dead, and the conditions at once present both opportunity and tempta-- tion almost too strong for human frailty to resist. It is quite proba-- ble that the enforcement of the rule of law as laid down in Chevalier· v. Wilson will now and then strain generous sentiment, but its wisdom is attested by antiquity, and we dare say by the experience of the bench and bar generally. The principles involved in this case, and the· conclusion arrived at by the majority of the Court of Civil Appeals do not stand for this case alone, but they are to furnish a rule of con-- duct for all the people of this State, and we submit, if from the facts. as they appear in the record a delivery may be judiciously implied,. no man's estate is safe from the danger of passing beyond his control or beyond the power of his testamentary disposition; for whatever he may declare in his will is subject to be overturned by this doctrine of· implied gifts.

*Pruitt & Smith* and *R. W. Flournoy,* for appellee.—The declarations. by Richard Lord to the effect that the policy in question was his sister Kate's were evidence of every fact necessary to make it hers, including evidence of the delivery of the policy. 1 Greenl. on Ev., sec. 97;. Malone's Appeal, 37 Legal Intelligencer, 63; Grangiac v. Arden, 10· Johns., 293; Wallace v. Pruitt, 20 S. W. Rep., 728; Flores v. Maverick,. 26 S. W. Rep., 316; White v. Holman, 60 S. W. Rep., 437; Ellis v. Stone, 23 S. W. Rep., 406; Hancock v. Tram Lumber Co., 65 Texas,. 225; Extence v. Stewart, 23 S. W. Rep., 295; Galveston, etc., Railway· Co. v. Hertzig, 22 S. W. Rep., 1013; Atkins v. Insurance Co., 62 S. W.. Rep., 563; Howard v. Perry, 7 Texas, 259; Glenn v. Garrison, 2 Harr.. (N. J.), 2; Gage v. Eddy, 167 Ill., 102.

BROWN, Associate Justice.—"In the above entitled cause,. on ap-- peal from the District Court of Galveston County for the Tenth Judi-- cial District to the Court of Civil Appeals for the First Supreme Judi-- cial District, judgment was rendered on the 7th day of November, 1901, affirming the judgment of the court below. From said judg-- ment, Associate Justice Pleasants dissented, and upon the motion of· the appellant, the point is certified to the Supreme Court for decision.

"The controversy was as to the ownership of the proceeds of a policy·

of insurance for $10,000 upon the life of Richard Lord, deceased, issued by the New York Life Insurance Company. Upon its face, the policy is payable to the executors, administrators, or assigns of the insured.

"Richard Lord died September 8, 1900, leaving a will in which he devised all his property of whatever character to his wife, Margaret G. Lord. Kate Lord, a sister of the deceased, claimed the policy of insurance as a gift from her brother, and brought this suit against the insurance company and Margaret G. Lord to require the proceeds to be paid to her. The insurance company admits liability upon the policy for the sum of $14,428, and offers to pay the money to whichever of the parties the court shall adjudge is entitled to it. A trial by jury in the court below resulted in a judgment in favor of the plaintiff, Kate Lord, against the insurance company for the amount above stated. From that judgment Margaret G. Lord has appealed.

"Richard Lord and the defendant, Margaret G. Lord, were married June 29, 1899. He was about 43 years of age at the time of his marriage, and his sister, the plaintiff, was then about 27 years of age. When Kate Lord was about 12 or 13 years old her mother died. Not long after the death of her mother their father went to South America, where he died within a short time. After the death of her mother and until his death, Kate Lord was supported entirely by her brother, Richard Lord. She had no property except an interest in some shares of mining stock inherited from her father and it yielded no income. The relations between the brother and sister were of the most affectionate nature and he provided liberally for her support and education. After she left school she lived with him until his marriage, and until his death had permission to draw against his bank account. At his death, Richard Lord left but little property except some policies of life insurance. These policies were all contained in a box which was locked and left by him in the custody of Adoue & Lobit, bankers in Galveston, in whose possession it was at the time of his death. Among the policies were two payable to the wife, amounting to $20,000; an accident policy for $5000 payable, in case of death, to Kate Lord, and three policies payable to the estate of the deceased, one of which was the one in controversy. All of them were issued after the marriage of Richard Lord and the defendant, Margaret G. Lord, except the one claimed in this suit by the plaintiff, Kate Lord. It bears date October 31, 1894, and was the only insurance Lord ever had upon his life prior to his marriage. The policy is set out at page 62 of the transcript, and either party, if it is deemed necessary, may file with this certificate a copy thereof. It is on the 20 years accumulation plan, and, among other benefits at the option of the insured, it had a cash surrender value at the end of the period and entitled the insured to procure loans during the period.

"The plaintiff introduced several witnesses as to declarations made by Richard Lord in his lifetime to show that he had given her the policy in suit. Emma J. McLellan testified that some time in 1894, before the issuance of the policy, Richard Lord told her that he would leave his

sister provided for with life insurance; and in 1896, he said that he had taken out this policy for her; that he was not a man to save money, and that he had left her provided for in life insurance. Charles Vidor, an insurance agent, testified that he was well acquainted and intimate with Lord; that five or six years ago he had asked Lord why he did not take out a life policy and that Lord replied that he had a policy for $10,000 and that was all he wanted as he only had his sister to care for; that the policy was for the benefit of his sister, and that he did not care to have any more. Louis Wortham, also an insurance agent, had a conversation with Lord in 1899 prior to his marriage and also in 1896 or 1897 with reference to insurance. They were friends and their relations were intimate. The witness said that Lord told him that he had a policy in the New York Life for the benefit of his sister, of whom he spoke as "Kitty;" that the policy was here. A. A. Green, Jr., testified that he was a life insurance manager and knew Richard Lord in his lifetime quite well; that in August, 1898, he had solicited him for insurance. That he said that he had one policy for $10,000 in the New York Life Insurance Company; that that policy was his sister Kitty's, and that he would like to have $10,000 additional insurance if he could stand the examination. Witness wrote his application, but the company applied to declined to issue the policy. This witness also testified: "When I came to ask him to whom he wanted this policy payable, he said, 'This policy in the New York Life is Katie's. * * * You know I am educating a girl. * * * Just make that payable to myself and I will arrange for that.' " James Irwin, also an insurance agent, testified that Lord applied to him for insurance in December, 1899, about six months after his marriage; that the witness asked him if he had any insurance and he answered "yes," he had some for his sister "Katie." Witness suggested that he ought to take out some insurance for his wife, and he said, "If I thought you could get me through, I would." Witness submitted Lord's name to the company represented by him, and it wrote the $20,000 for the benefit of his wife. Neil P. Anderson testified that he resided in Fort Worth and was a general agent for McFadden Brothers in the cotton business; that Richard Lord had been in the employ of the firm from about 1891 or 1892 until his death; and that he had known him since 1887 or 1888. They were in business touch with each other every year, but Lord's office would be changed from year to year. The witness said: "I think it was in 1894, the latter part of that year, * * * Mr. Lord gave me some valuable papers in a sealed envelope to be cared for for him, asking me if I could take care of them in my safe. I told him yes, I would put them in my private till. When he handed them to me, he says, "In this is a policy for my sister Kate." Witness kept the papers for about a year, when Lord called for them and he delivered them to him. The attention of the witness was not directed to any other paper in the package and the matter was never mentioned again. It appeared from the evidence that Lord was a man of good business qualifications and understood the effect of the language

of the policy and knew what would be necessary to make it payable to his sister.

"In affirming the judgment of the court below, this court sustained the verdict of the jury and held that there was sufficient legal evidence to support the finding of the jury that Richard Lord gave the policy of insurance to his sister and that actual delivery thereof might be implied from the evidence. Associate Justice Pleasants dissented from the conclusion of the majority upon the ground that the evidence was insufficient in law to sustain the finding of the jury that the policy was given by Richard Lord to the appellee. The question is therefore certified to the Supreme Court for decision, whether or not there was any evidence legally sufficient to support the verdict of the jury that Richard Lord had given the policy to his sister, Kate Lord?"

In order to sustain the judgment of the trial court and the majority of the Court of Civil Appeals, the evidence must be sufficient to justify the finding that Richard Lord gave the policy of insurance in controversy in this suit to his sister Kate and delivered it to her in such manner as to pass the title thereto so that he had no control over the title thereafter. Whether or not there was such a delivery was a question of fact to be tried by the jury and was capable of proof in the same manner and by the same character of evidence as would establish the gift itself, or any other issuable fact in the case. The declarations of Richard Lord introduced in evidence were competent to prove both the gift and the delivery. Thornton on Gifts, sec. 230; Hansell v. Bryan, 19 Ga., 167; Sprouse v. Littlejohn, 22 S. C., 358. The appellant cites as authority to the contrary of this proposition the case of Chambers v. McCreery, 106 Fed. Rep., 368. That case holds squarely that the delivery of a gift can not be proved by the declarations of the donor, but no authority is cited in support of that proposition and we have found none agreeing with it. We see no reason why the fact of delivery could not be as well proved by a declaration as the fact of gift itself, or any other fact about which a party had made a declaration against his own interest.

The declarations made by Richard Lord being admissible and admitted in evidence, the question arises, what probative force are they entitled to? To Louis Wortham, insurance agent, Lord stated the policy in this suit "is hers," meaning Miss Kate Lord; and speaking to Mr. Green of this policy, said, "It is Kate's." These statements were equivalent to saying the policy was the property of his sister Kate, from which the jury might infer that Richard Lord had given it to his sister, and that he had actually delivered it into her possession, or done that which was equivalent to such act of delivery and every other act necessary to transfer it to her. It could not be true that it belonged to his sister Kate, or, in the language used, that it was hers, or Kate's, as stated by one witness, unless Lord had given it to her and had actually delivered it, because the right of property could not have passed without such act of delivery. 2 Taylor on Ev., sec. 800; 1 Greenl. on Ev., 16 ed., secs.

563-1; Hancock v. Tram Lumber Co., 65 Texas, 225; Stephens v. Masterson, 90 Texas, 417; Howard v. Perry, 7 Texas, 259; Hunt v. Hunt, 119 Mass., 474; Kelly v. Maness, 123 N. C., 236; Sprouse v. Littlejohn, 22 S. C., 358; Hansell v. Bryan, 19 Ga., 167.

In Howard v. Perry, it was necessary for the plaintiff to prove that the certificate by which the land was located had been presented to the land board and approved, or suit filed and judgment of approval entered, and the court said: "It appears that the plaintiffs admitted, on the trial, that it was a good certificate. By this, it must have been intended that it was a certificate which had been duly recommended; for otherwise it could not have been said to be a 'good' certificate. No other sensible meaning can be attached to the word 'good,' as here employed, than that it was used to denote a certificate which was good in law in contradistinction to such as are deemed fraudulent and void." The Supreme Court of South Carolina, in passing upon a similar question, said: "It is true that delivery must be proved, but this is a question of fact for the jury, and inasmuch as there can be no complete and legal gift without delivery, the very use of the term 'gift' or 'I have given' may sometimes be intended to include the delivery, and where therefore such declarations have been used by the donor and they are admitted by the court as competent, we think it ought to be left to the jury to say whether the gift has been proved, including the delivery, and it ought not to be laid down as a rule of law to govern the jury, that such declarations in themselves are insufficient to prove the gift." Sprouse v. Littlejohn, supra.

In the case of Chevallier v. Wilson, 1 Texas, 160, the Supreme Court held that the declaration of the donor that she had given the property in question to the donee was not sufficient to sustain the judgment, but in that case the court was acting with power to review the facts as well as the law, and the question now presented was not before that court. The following language shows that the Supreme Court decided the case on the preponderance of the evidence: "We have heretofore considered the claim of the petitioners on the acknowledgment of Mrs. Wadlington that she had given the property to her daughter, and have seen the effect of such acknowledgment counteracted by all the facts of the case. This, however, was but the evidence of one of the witnesses, and the question must be decided, not on his, but on the testimony of the others, which goes only to the extent that the mother intended the slave for her daughter, at her (the mother's) death." It has been frequently said by judges on delivering opinions upon questions of parol gifts that the evidence must be clear and satisfactory, and it has not been unfrequently the case that they have refused to sustain judgments based upon evidence as strong as that presented in this case; but those decisions are made upon the weight of all the evidence and are the results of the influence the testimony had upon the mind of the court. They are therefore not authority in the determination of the question submitted.

The rule by which this court must be governed is, "if the testimony

is of such a character that there is no room for ordinary minds to differ as to the conclusions to be drawn from it," that there was no evidence of delivery, the question must be answered in the negative. The converse of that proposition is just as true—if upon the evidence in the record ordinary minds might differ as to the conclusion to be drawn upon the issue of delivery, the answer must be in the affirmative. We are of opinion that the evidence in this case is not of the character which would have justified the district judge in taking the question from the jury, in other words, the evidence was sufficient to raise an issue of fact whether there had been an actual delivery of the policy or not.

We answer that the facts present sufficient evidence as a matter of law to support the finding of the jury that Richard Lord did give the policy to his sister, Kate Lord.

*Opinion of majority sustained.*