ELDRIDGE v. McDOW.

(Court of Civil Appeals of Texas.    Dec. 22, 1910.)

1. Gifts (§ 18*) — Animals — Possession — Recording Brand.

Under Rev. St. 1895, art. 2546, providing that no gift of chattels shall be valid unless by deed or will, duly acknowledged and recorded, unless actual possession be taken and retained by the donee, and article 4930, providing that no cattle brands, except such as are recorded, shall be recognized as any evidence of ownership, no title passed to cattle which were branded with a peculiar brand by the owner, pursuant to his express intention that they and their issue should belong to his niece where the latter never had actual possession of the cattle which continued to run on the donor's range and to be looked after by him, and the brand was not recorded.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 29–33; Dec. Dig. § 18.*]

2. Appeal and Error (§ 1175*)—Disposition —Rendition.

Where the evidence was fully developed at trial, the Court of Civil Appeals will render

such judgment as the trial court should have rendered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from Wharton County Court; J. R. Bowen, Judge.

Action by Minnie McDow against W. T. Eldridge. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

See, also, 46 Tex. Civ. App. 270, 102 S. W. 435.

G. G. Kelley, for appellant.

REESE, J. This suit was instituted in the county court by W. G. McDow as next friend of the minor, Minnie McDow, against W. T. Eldridge on March 10, 1904, to recover 17 head of cattle alleged to be the property of said Minnie McDow. A writ of sequestration was sued·out under which 13 head were seized which were replevied by plaintiff and afterwards sold by him. A trial with a jury resulted in a verdict and judgment for plaintiff, from which defendant appeals. This is the second appeal of the case. On the first trial, also, plaintiff had judgment, which upon appeal to this court was reversed and the cause remanded. A full statement of the issues will be found in the report of that appeal. Eldridge v. McDow, 46 Tex. Civ. App. 270, 102 S. W. 435. So much of the facts as are necessary will be stated in passing upon the only assignment which we will discuss, and which is decisive of the appeal. The appellant requested the court to instruct the jury to return a verdict for the defendant because the undisputed evidence showed that the gift of the cattle in controversy made by W. G. McDow was void under the statute of frauds. This charge was refused, and the refusal is made the ground for the first assignment of error.

The undisputed evidence shows that the cattle in question are the increase of two cows and two heifers, which in 1898 belonged to W. G. McDow, and which in that year he gave, or attempted to give, to his niece, Minnie McDow, then a child of seven or eight years old. It is likewise shown by the undisputed evidence that if the title to these four head did not pass by the verbal gift, then they and their increase, including the cattle in controversy, remained the property of W. G. McDow, and passed to appellant by the terms of a bill of sale to him executed by W. G. McDow and A. M. McDow on February 4, 1904. Eldridge v. McDow, 46 Tex. Civ. App. 270, 102 S. W. 435.

With regard to this verbal gift the undisputed evidence shows that at the time it was made Minnie McDow was on a visit to the home of her uncle, W. G. McDow, with whom she did not live.

The following is the statement of W. G. McDow: "One evening we were branding some cattle, and I asked my brother, Arthur McDow, how many she cattle there were in the pen, and he said four or five, and I told him to brand them for Minnie, as I intended to give her some cattle, and I got up a brand and put it on five head for her; I think there were two cows, two heifers and one calf, on which we put the brand, which was TX and T. I had never used this brand on any cattle before this time, and never used it on any other cattle after that time except the increase from these five head, which were all branded in the same· brand. I did not have the brand recorded. I told Minnie McDow I had given her those cattle for a start, and told my brother Arthur McDow the same thing, and the cattle were turned in the range near our place. I looked after them for Minnie McDow until the early part of the year 1900, when I left there and went to Matagorda county. Since then I have never had actual charge of the cattle, but always inquired about them when I occasionally went back home. After 1900 Arthur McDow had personal supervision of the stock and attended to them, branding the increase."

A. M. McDow testified as follows: "We were branding some cattle there one evening, and Walter McDow came out where we were and brought Minnie with him, and when he got there he remarked, 'I intend to give Minnie some cattle,' and asked how many she cattle we had in the pen. I told him there were about 50 head of cattle, but only 4 or 5 she cattle. I think there were two cows, one calf, and two heifers, and we put the TX and T brand on them, and turned them loose on the range with the other cattle. Later, some of them had calves. After that time they ran with other cattle on the range. * * * I don't know whether my brother stayed there all the time up to the time this suit was filed or not. He farmed there for a couple of years, and went to work on the railroad, grading. After my brother left there, there was no one specially in charge of those cattle. I had branded the calves when I branded my cattle. No one had any special charge of them. I had lots of other cattle in charge when I made the deal with Mr. Eldridge, and I sent the other parties word that I was going to leave, and that they had better take charge of these cattle; and I told Walter to take charge of these cattle, as I would not be there any more. Yes; at that time I was deep in debt to Mr. Eldridge; owed him a good deal of money—six or seven thousand dollars."

The witness further testified that the TX and T brand was his brother Walter's (W. G. McDow), and W. G. McDow testified that the brand was not recorded. Minnie McDow testified that she was the owner of the cattle; that W. G. McDow gave them to her, and that they had been in her charge and possession ever since she owned them, but

that she had never seen them, and that her Uncle Walter had been looking after them for her.

The undisputed evidence shows that after the original five head were branded and turned out of the pen they ran on the range with other cattle of W. G. McDow and A. M. McDow, and were looked after by them, the increase being branded in the TX and T brand, and that Minnie McDow never in fact at any time had actual possession of them, or any other sort of possession except as indicated by the fact that they had been branded for her by W. G. McDow, using an unrecorded brand, and looked after by him and A. M. McDow for her. There was, in fact, no change in the possession of the cattle at the time of, or after, the verbal gift.

Article 2546, Rev. St. 1895, is as follows: "No gift of any goods or chattels shall be valid unless by deed or will, duly acknowledged or proven up and recorded, or unless actual possession shall have come to and remained with the donee or some one claiming under him."

Article 4930, Rev. St., provides that: "No brands except such as are recorded * * * shall be recognized in law as any evidence of ownership," etc.

The case of Hillebrant v. Brewer, 6 Tex. 50, 55 Am. Dec. 757, was decided before the enactment of article 2546, which first appears in the Revision of 1879, but even under the rule of the common law, not nearly so stringent in case of verbal gift of chattels, in the requirement of delivery of possession, as the statute quoted, the court seems to have based its decision largely upon the fact that the cattle, the subject of the verbal gift, were branded in a brand recorded in the name of the donee. This fact is also the basis of the decision in Coke & Reardon v. Ikard, 39 Tex. Civ. App. 410, 87 S. W. 869. The facts of this case are substantially identical with those in the case of Love v. Hudson, 24 Tex. Civ. App. 377, 59 S. W. 1127, decided by the same court. In addition to these cases we cite Lord v. Ins. Co., 95 Tex. 216, 66 S. W. 290, 56 L. R. A. 596, 93 Am. St. Rep. 827; Eldridge v. McDow, 46 Tex. Civ. App. 270, 102 S. W. 435. It may seem a harsh rule of law that would thus thwart the benevolent and altogether praiseworthy intention of the donor, but that does not authorize the court to disregard the plain, positive provisions of the statute by which, under the undisputed evidence, this verbal gift was void.

The charge to return a verdict for the defendant should have been given, and for the error the judgment must be reversed. The evidence has been fully developed, and there is no profit in remanding the cause, which has been pending since 1904, for another trial. So it becomes our duty to render such judgment as should have been rendered in the trial court. Henne & Meyer v. Moultrie, 97 Tex. 216, 77 S. W. 607.

Plaintiff replevied the cattle and gave a replevy bond with W. S. Brooks, W. G. McDow, and F. B. Davis as sureties. It was shown that Brooks is dead and his estate entirely insolvent. Two witnesses testified to the value of the cattle, which have been sold by plaintiff. While not exactly agreeing as to such value, they both place it at more than the amount for which we are asked to render judgment—$219.88. Judgment is therefore rendered that plaintiff take nothing by her suit, and that defendant Eldridge have and recover of plaintiff and the said sureties, Davis & McDow, the sum of $219.88, with 7 per cent. interest per annum from July 15, 1904, the date of the replevy bond, together with all costs of the district court and appellate courts. Let the judgment be so entered.

Reversed and rendered.