**DUNCAN et al. v. MOORE.**

No. 8868.

Court of Civil Appeals of Texas. Austin.

Dec. 30, 1939.

Rehearing Denied Jan. 24, 1940.

Bill S. Watkins, Alfred Mueller, and Carlos C. Ashley, all of Llano, J. V. Hammett, of Lampasas, and Thos. C. Ferguson, of Burnet, for plaintiffs in error.

Lawrence L. Bruhl, of Llano, for defendant in error.

BLAIR, Justice.

This suit was instituted for the partition of 320 acres of land, the adjustment of the equities, and the determination of the title as between the heirs of L. A. Moore, deceased; and plaintiffs also sought to invalidate and set aside a deed executed in 1918 by L. A. Moore and his second wife to defendant, Euel Moore, conveying to him an undivided one-half interest in the 320 acres of land for a recited consideration of $1,800, evidenced by six notes, four for $250 each, and two for $400 each; the deed expressly retaining a vendor's lien to secure the payment of the notes. This deed was filed for record on September 27, 1939, and plaintiffs allege that they knew nothing of it until a few days before they filed this suit, one month later, on October 27, 1937; and plaintiffs also allege that all or a greater part of the consideration recited in the deed had not been paid to L. A. Moore or to his heirs after his death, and asserted superior title to the land conveyed under the vendor's lien retained in the deed, and thus plaintiffs sought to partition the whole 320 acres of land.

Defendant, Euel Moore, answered by a general demurrer, which was overruled, a

general denial, and a cross-action in trespass to try title.

L. A. Moore was twice married, first to Martha Ellen Moore; and second to Nannie Moore. Martha Ellen Moore died in 1882, intestate, at which time the 320 acres of land were a part of the community estate of herself and her husband, L. A. Moore; and as her heirs she left her husband and ten children of this marriage. L. A. Moore remarried in 1886 to Nannie Moore; and of this marriage there were four children, including Euel Moore; and the children of the two marriages, or their heirs, are parties to this suit.

In 1887 and shortly thereafter, L. A. Moore made a parol partition and settlement with the children of his first marriage, some of them in full. In answer to special issues submitted, the jury found that the four named children of the first marriage had not been fully settled with by the parol partition, and found the amount due each of said four children, the total being $400. Upon these findings, the trial court decreed that L. A. Moore became the owner of the 320 acres of land, subject to the claims of the four children for $400. This portion of the judgment is not contested.

After the death of L. A. Moore in 1919, Mrs. Nannie Moore continued in possession through tenants of the 320 acres of land, which according to all the witnesses, several of the heirs both plaintiffs and defendants, was the wish of L. A. Moore; he expressing the desire that she have the rents and revenues of the land for her support. And as reason for not placing the 1918 deed of L. A. Moore and wife to Euel Moore, conveying an undivided one-half interest in the 320 acres, on record, Euel Moore testified that it was upon agreement with his father at the time of executing the deed not to place it of record until the death of the second Mrs. Moore, in order that she might have all the rents and revenues of the 320 acres for her support during her lifetime. Euel Moore testified that he paid the first of the six vendor's lien notes for $250 to his father prior to his death in December, 1919; and there was apparently no dispute as to this because the only other issue submitted to the jury was whether the "five" remaining vendor's lien notes "were fully paid prior to the death of the second Mrs. L. A. Moore." The jury found that they had been paid, and the trial court accordingly found that the 1918 deed from L. A. Moore

and wife to Euel Moore was valid, and decreed that since the purchase money notes had been paid in full to Mrs. Nannie Moore during her lifetime, the judgment vested title to an undivided one-half interest in the 320 acres of land in Euel Moore. The judgment also recited that all of the parties had agreed that an undivided one-half interest in the 320 acres of land was not susceptible of partition in kind; and the court decreed that said one-half interest be sold and the proceeds be divided among the heirs of L. A. Moore, naming them, share and share alike, after paying the claims of the four children who had not been paid fully for their interest in the estate of the first Mrs. L. A. Moore, aggregating $400.

The attack upon the validity of the deed of 1918 to Euel Moore, because of alleged undue influence and mental incapacity of L. A. Moore to execute it, was not supported by any legal evidence and no issue was submitted or requested to be submitted to the jury; and no complaint is made here as to any question of the invalidity of said deed upon the grounds so alleged.

Appellants raise the question that the jury's finding that the five vendor's lien notes had been paid prior to the death of the second Mrs. L. A. Moore is not supported by any legal evidence, (1) because the evidence was insufficient to show a gift inter vivos of the notes to her by her husband, L. A. Moore; and (2) because she was at most only a co-tenant with the other heirs of L. A. Moore in the ownership of the notes, and entitled to collect only her share of the notes; and therefore payment to her of all the notes did not constitute payment of the interest or share of the other co-tenants in the notes.

As stated herein there seems to be no question that the first vendor's lien note for $250 was paid to L. A. Moore during his lifetime. As to the remaining five vendor's lien notes, two questions of fact as to their payment were raised by the pleadings and evidence: (1) whether in fact the notes had been paid prior to the second Mrs. Moore's death; and (2) whether L. A. Moore had made a delivery or gift inter vivos of the notes to her. The jury found that the notes had been paid prior to Mrs. Moore's death, which finding is supported by sufficient evidence, which will be set out in our discussion of the question of gift inter vivos of the notes to Mrs. Moore. No issue was submitted, nor was

any issue requested to be submitted to the jury on the question of delivery or gift inter vivos of the notes to Mrs. Moore. In consequence, if there is evidence to support the issue of delivery or gift inter· vivos, then the trial court must be held to have found that issue in support of the judgment rendered. Arts. 2189,. 2190 Vernon's Ann.Civ.St.; 25 Tex.Jur., 492, § 108, and cases there cited. This appellants concede because they make only the contention that the evidence as a matter of law does not support a gift inter vivos of the notes to Mrs. Moore. This contention cannot be sustained.

Euel Moore testified that at the time the deed and notes in question were executed and delivered L. A. Moore, Mrs. Nannie Moore, the notary public, a Mr. Hill, and himself were present. That his father told him that after the father's death the notes remaining unpaid were to be paid to Mrs. Nannie Moore; that the first note for $250 was paid to L. A. Moore on or before maturity, and this is not contested; that after his father's death in 1919 he paid each of the remaining five notes to his mother as directed by his father, on or before their respective maturity dates. The deed and notes were introduced in evidence. Each note had indorsed on its back the date it was paid. Some of these indorsements were made by Euel Moore at the request of his mother at the times the payments were made, and some of the indorsements of payment were made by Mrs. L. A. Moore herself at the time payments were made. These indorsements were each dated and showed that all the notes were paid on or before maturity. These notes were in the possession of Mrs. L. A. Moore after the death of L. A. Moore and at the time they were paid; and after the last one was paid in 1924, they were delivered to defendant, Euel Moore, who introduced them in evidence. Euel Moore testified that his mother received all the rents and revenues from the 320 acres during her lifetime; that she used them for her support, and that she used the money paid on the notes to pay taxes on the land, to repair the dwelling house thereon, but most of it for her support and maintenance during her lifetime. That in addition to paying the notes to her, he also contributed considerable sums of money from time to time for her support; and that none of the other children contributed anything of consequence to her support. She left no property when she died.

There was no formal transfer of the notes to Mrs. Moore by her husband, but delivery of them to her was circumstantially shown by the fact that they were continuously in her possession until they were paid. This evidence raised a fact issue of gift inter vivos of the notes to Mrs. Moore; and since no request was made to submit that issue to the jury, and being justified by these facts, the trial court, in connection with the jury's finding that the notes had been paid prior to the death of Mrs. Moore, properly determined this supplemental or incidental issue in support of the fact found by the jury and of the judgment rendered.

In the case of Merchant v. Rogan, Tex. Civ.App., 150 S.W. 956, a much weaker state of facts of executed gift of notes was shown, but the court held the question of gift inter vivos to be one for the jury to determine.

As to proof of delivery of the gift, 21 Tex. Jur., 65, 66, § 46, states the rule to be as follows: "While the opinion has sometimes been expressed that a finding for the claimant should be set aside in the absence of positive evidence of completion of the gift by delivery, the weight of authority supports the view that the intention of the donor is the paramount consideration, and therefore, provided such intent has been satisfactorily shown, the courts favor the conclusion that the gift was completed by the acts of the donor. Nevertheless there are authorities which assert that delivery of the property must be specifically and clearly proven, although circumstantial evidence is sufficient. It has further been held that the jury may infer delivery from statements made by decedent in his lifetime implying that. he had given the property to the claimant; it is not necessary that even a decedent donor should have explicitly stated that he made a gift." See also Taylor v. Sanford, 108 Tex. 340, 193 S.W. 661, 5 A.L.R. 1660; Lord v. New York Life Ins. Co., 95 Tex. 216, 66 S.W. 290, 56 L.R.A. 596, 93 Am.St.Rep. 827.

Since we hold that a gift inter vivos of the notes to Mrs. Moore was established, and since the jury found that the notes were paid prior to her death, the payment of the notes discharged the debt and lien, and the other question as to her authority as tenant in common to collect the notes need not be discussed.

Appellants also raise as fundamental error the question that the trial court failed to partition the whole 320 acres of land as prayed for in the pleadings. The judgment recites that the parties agreed that the one-half undivided interest belonging to all the heirs of L. A. Moore was not susceptible of partition; and the court ordered it sold at private sale for cash, and that report of the sale be made to the court for approval and confirmation. Appellee plead and prayed in his cross-action that this be done. Certainly the judgment does not present fundamental error in this respect..

The judgment of the trial court is affirmed.

Affirmed.