## ELLSWORTH v. ELLSWORTH.

### No. 4052.

Court of Civil Appeals of Texas. El Paso.

April 17, 1941.

Rehearing Denied June 5, 1941.

Weber & Wolfe, of San Antonio, for appellant.

John Peace, Jr., Fred Felty, and Schlesinger, Schlesinger & Goodstein, all of San Antonio, for appellee.

PRICE, Chief Justice.

This is an appeal from the judgment of one of the District Courts exercising jurisdiction in Bexar County. As plaintiff, Mrs. H. E. Ellsworth recovered a judgment against Sofia Dora Ellsworth, individually, and as independent executrix of the estate of F. Leslie Ellsworth, deceased, in the sum of $4,280. This judgment denied relief to plaintiff as to other causes of action asserted by her. Plaintiff perfected an appeal from that part of the judgment denying relief, but not from same insofar as same was in her favor. The various grounds of relief sought were severable, and no question is raised as to the right to so limit the appeal. Defendant has not appealed from the judgment rendered, and does not cross assign error. Our discussion of the case will develop the separateness of the several causes of action asserted by plaintiff. In short, seven separate and distinct causes of action were asserted by plaintiff, and relief was awarded on only one.

Appellant will be hereinafter designated as plaintiff, and appellee as defendant, as such was the designation in the trial court.

Plaintiff's trial petition sought recovery against defendant individually and as executrix of the estate of F. Leslie Ellsworth, deceased, to recover sums of money obtained by defendant from the sale by defendant of certain corporate stocks which plaintiff alleged belonged to her, but which stood on the records of the several corporations in the name of F. Leslie Ellsworth, deceased; also she sought to recover the title to 25 shares of stock of the Central Power & Light Company. The stocks involved were as follows:

1. Forty shares of 8% preferred stock of San Antonio Public Service Company;

2. Thirty shares of 6% preferred stock San Antonio Public Service Company;

3. Three shares of $10 common stock, City Service Company;

4. Fifteen shares of common stock of the Schenley Distillers Company;

5. Fifteen shares of the common stock of the Otis Steel Company;

6. Five shares of the common stock of National Distillers Products Corporation;

7. Twenty-five shares of the Central Power & Light Company.

It was averred that the defendant had sold and held most of the sale price of such stocks save group No. 7, as to which plaintiff sought to recover the title. As to the stocks sold by defendant no question was made as to the price realized, and recovery of such prices was sought.

Defendant answered by general denial, specially that the stocks in question were the separate property of her deceased husband, F. Leslie Ellsworth, at the time of his death and the title thereto passed to her by virtue of the duly probated will of her husband; that plaintiff had made a gift of the stocks to F. Leslie Ellsworth. Further, that if the stocks were not the separate property that plaintiff had caused the title thereto to be taken in his name with intent to evade the Federal income tax.

Trial was before a court and jury, submission on special issues, and on the verdict returned the court entered the judgment above indicated.

Two issues were submitted as to the ownership of each group of stock. We shall

here reproduce the issues with reference to one group, with the statement that same is typical as to the others.

"Special Issue No. 2: Do you find from a preponderance of the evidence, if any, that at the time of the death of F. Leslie Ellsworth the plaintiff, Mrs. H. E. Ellsworth, was the owner of the 30 shares 6% preferred stock of the San Antonio Public Service Company in question?" To which the jury answered: "No."

Plaintiff's special issue No. 8, as follows: "Do you find from a preponderance of the evidence that it was mutually agreed by and between F. Leslie Ellsworth and plaintiff that the 30 shares in question of 6% preferred stock of the San Antonio Public Service Company were to be and should remain the personal property of plaintiff?" To which the jury answered: "No."

The issues submitted as to the ownership of the 40 shares of preferred 8% stock in the San Antonio Public Service Company were found in favor of the plaintiff, and that finding forms the basis of the judgment insofar as same is in her favor. The findings on the other issues form the basis of the judgment in favor of defendant as to the other stocks.

Issues were submitted as to whether the purpose of plaintiff in placing these stocks in the name of F. Leslie Ellsworth was to evade the Federal income tax. These issues were all found in the negative.

Plaintiff, at the close of the evidence, moved for an instructed verdict in her favor awarding substantially the relief sought in her petition. Further, the adverse findings were attacked by a motion to enter judgment non obstante veredicto, which motion was denied, and judgment entered as above indicated.

Throughout the trial and here plaintiff has consistently maintained that there was no issue to be submitted to the jury, and under the testimony she was entitled to the relief sought. This position is urged here by sundry assignments of error with appropriate propositions properly briefed.

Other matters are raised in the appeal, but a consideration of the assignments as to the sufficiency of the evidence to sustain the verdict and judgment rendered thereon are probably first in order.

This general statement we think is justified by the record here: that if the full title to the stocks was in F. Leslie Ellsworth at the time of his death, same was by reason of a gift of the stocks to him by plaintiff.

A general statement of the undisputed facts will perhaps aid in the consideration of this appeal.

Plaintiff was the surviving widow of H. E. Ellsworth, who died testate in 1932, leaving surviving him plaintiff, and H. T. Ellsworth and F. Leslie Ellsworth, sons. By the terms of his duly probated will he gave all he possessed, save some life insurance, to plaintiff. His estate was substantial. This clause appears in the will: "Having every confidence that my wife will use any property that I may leave for the best interests of any children we may have as well as herself, I purposely make no provision for any such children except as hereinafter provided."

F. Leslie Ellsworth died testate on or about the 11th day of October, 1939, leaving surviving defendant, who was his wife, and a minor child. His duly probated will left all his property, except a few small legacies, to defendant, naming her as independent executrix; she qualified as executrix, and has sold all of the stocks involved herein, save and except the 25 shares of stock in the Central Power & Light Company. To this stock she is asserting title.

Most of the money realized by defendant on the sale of the stocks is in her custody, but by injunction issued at the instance of plaintiff she is required to hold same subject to the final disposition of this case.

All of the stocks involved at the time of the death of F. Leslie Ellsworth stood in his name on the records of the respective corporations, and the respective certificates evidencing the ownership of the stock likewise were in his name, and all save the Central Power & Light shares in his possession.

After the death of plaintiff's husband, her son, F. Leslie Ellsworth, kept her books and assisted her in her business affairs. For these services he was paid the sum of $20 per week, or, in any event, plaintiff gave him that sum. Likewise he occupied a house which was part of the estate left by his father to plaintiff. He at all relevant times resided in San Antonio, Texas, which was the residence of plaintiff. Their relations were affectionate, although they did not reside in the same house. The other son, H. T. Ellsworth, resided in Laredo,

Texas. Plaintiff is over seventy years of age, F. Leslie Ellsworth, her son, at the time of his death, was about forty-six years of age, the other son, H. T. Ellsworth, is about fifty-six years of age.

The evidence as to the transactions in relation to these stocks between plaintiff and her deceased son is almost entirely to be found in the testimony of H. T. Ellsworth, the surviving son. Plaintiff was not a competent witness thereto under Art. 3716, R.C.S.1925. One of the material questions involved in this appeal is the probative effect of the testimony of H. T. Ellsworth. Without discussing this question we shall endeavor, as briefly as possible, to summarize his testimony relative to each group of stocks involved. However, before undertaking to do this, it may shorten matters to narrate generally his testimony relating to his and his deceased brother's transactions with plaintiff.

He testified that on the death of his father in 1932 his brother Leslie was without employment, and that it was agreed between plaintiff and her sons that in order to help Leslie, stock belonging to her might be put in his name, thus making it appear that he was in substantial circumstances, affording him an opportunity to attend stockholders' meetings and thus giving him prestige. However, that the stocks were to remain the property of plaintiff and the dividends to be paid to her. Further, that when stock was placed in Leslie's name an equal amount of the same stock was to be placed in the name of the witness. The purpose of this latter arrangement was, stated in the words of the witness, "so that if anything should happen to either one of us there would be no family argument." Further that the stock after issued should be returned to plaintiff endorsed in blank; that neither son paid anything for the stock so issued to them; that Leslie turned over to his mother the dividend paid on the stock standing in his name; there was an exception to this as to one or more dividends paid to Leslie on the 40 shares of San Antonio Public Service Company, this, the 8% preferred.

The 25 shares of Central Power & Light Company stock is the only unsold stock involved. Witness's history of same was about as follows: Before the death of his father witness was employed by that Company; it had a policy favoring ownership to and extent of its stock by its employees; his father, to aid him, furnished money to buy 50 shares in the name of the witness; same was issued in the name of witness, who endorsed same in blank and delivered same to his father, his father collecting dividends thereon; in April or March, 1939, plaintiff had this stock in her custody and delivered same to him with directions to have a new certificate issued therefor, 25 shares in his name and 25 shares in the name of his brother. He testified that he complied with this direction and the shares so issued were sent to him by the company with the request that he obtain a receipt from his brother for the 25 shares standing in the name of the brother; that he had never delivered the 25 shares to his brother for the reason that he had not gotten him to endorse same in blank for delivery to plaintiff; that neither he nor his brother paid anything for this stock.

His testimony as to the 40 shares of preferred 8% stock in the San Antonio Public Service Company and the 30 shares of 6% preferred stock in that Company should be considered together. It should be borne in mind that the 40 shares of 8% stock were found to be the property of plaintiff; the 30 shares the property of defendant. According to the testimony of the witness plaintiff owned 100 shares of preferred 8% stock in the Company, having acquired same through her husband's will; a new certificate was issued therefor in her name; on December 17, 1936, she surrendered this certificate and caused 40 shares to be issued in the name of witness and 40 shares in the name of his brother, the balance, and perhaps 44 additional shares she had acquired, to be issued in her name; that it was mutually agreed that the stock so issued to witness and his brother was to remain the property of plaintiff; that on April 12, 1938, his brother, joined by defendant, executed a written acknowledgment to this effect; that witness and his wife likewise executed a written acknowledgment to like effect as to the shares standing in the name of the witness. The written acknowledgment executed by witness was delivered to his brother and that executed by his brother to the witness.

It does not appear from the record that plaintiff was in any way a party to these mutual acknowledgments or had notice thereof. There are several of these acknowledgments introduced in evidence, all, though relating to different stocks, of the

same purport and tenor. We will here copy the acknowledgment executed by defendant and her deceased husband:

"San Antonio, Texas
"April 12, 1938

"We, F. Leslie Ellsworth and wife, Sofia Dora Ellsworth, hereby acknowledge and certify that stock certificate No. 5995, dated ———— for Forty (40) shares of 8 percent pfd. stock of the San Antonio Public Ser. Co., said stock certificate being in the name of F. Leslie Ellsworth is, and shall remain the personal property of Mrs. H. E. Ellsworth during her life. Further: Any dividends accruing or paid during the life of the said Mrs. H. E. Ellsworth are acknowledged to be the personal property of the said Mrs. H. E. Ellsworth.

"Witness our hands and seals this the 12 day of April, A. D. 1938.

(Signed) F. Leslie Ellsworth
(Signed) Sofia Dora Ellsworth."

Sometime in 1939 the San Antonio Public Service Company desired to refinance its outstanding seven and eight percent preferred stock by an issue of six percent preferred stock. It made this sort of an offer: that shareholders holding shares of this character should have a right to subscribe for the new six percent preferred shares to the extent they held the old shares, the old shares to be redeemed in September, 1939, for 105 and accrued dividends. Upon consultation between plaintiff, witness and Leslie Ellsworth, it was agreed to subscribe for the new 6% preferred stock, 40 shares in the name of witness, 40 shares in the name of Leslie Ellsworth, and 64 shares in the name of plaintiff. This was done, and the shares were issued in accordance with such subscription, plaintiff giving her checks aggregating about $14,400 in payment for such new 6% preferred stock. The stock issued in accordance with the subscription on August ——, 1939; that it was the agreement that the stock issued to witness and to his brother was to be the property of plaintiff, and endorsed to her; that Leslie never endorsed the stock certificate to plaintiff; that he sold ten of the shares represented by the 40-share certificate and had a new certificate issued to himself for the remaining 30 shares; that several days after the death of Leslie defendant delivered this certificate for the 30 shares of 6% preferred stock to him.

The testimony of the witness being about the same as to the three shares of City Service stock, the 15 shares of Otis Steel Company, the 5 shares of National Distillers Corporation, and the 15 shares of Schenley Distillers Company, it may be considered together. It was substantially that the plaintiff's money purchased the stocks; that same were taken in the name of Leslie, and thereafter these certificates surrendered and new certificates issued, part in the name of witness and part in his brother's name.

The sufficiency of the evidence to sustain the findings of the jury as to each set of stocks is assailed. This necessitates consideration separately of several at least.

It indisputably appears that each and every share of the stock in controversy on the records of the issuing corporation stood in the name of defendant's testator. In case of the 30 shares of stock in the San Antonio Public Service Company, this was coupled with the physical possession of the certificate evidencing the ownership of the stock. On the other hand, it indisputably appears from the testimony that said stock was purchased with the money of plaintiff. The only tenable basis of defendant's claim to ownership of this particular stock is a gift from plaintiff to her son. It is the contention of plaintiff that these facts created a mere presumption of ownership, and that this presumption was overcome by the testimony of H. T. Ellsworth.

In order to consummate a gift of incorporeal personal property such as corporate stocks, there must be an intention on the part of the donor that the title thereto vest in the donee. The intention of so vesting the title must be consummated by delivery to the donee to the extent that such property is reasonably susceptible of delivery. In other words, to constitute a gift the intent to make same must likewise be consummated.

"If one causes a deed to be made to another for whom he is under no obligation to provide (the consideration moving from himself), the grantee is presumed to hold the land in trust for him who paid the purchase money; but, if the grantee be the child of the latter, the property is considered an advancement, and the conveyance vests an absolute title in such grantee." Smith et al. v. Brown, 66 Tex. 543, 1 S.W. 573, Syl. 3.

So far as we have been able to find, the above quoted principle of law has been

consistently followed in this State. Shepherd v. White, 10 Tex. 72; Turner et al. v. Dinwiddie, Tex.Civ.App., 276 S.W. 444.

■ It is elementary we think that the burden was upon the plaintiff to establish the material allegations of her petition to entitle her to the relief sought. This fact, however, does not determine where the burden of producing evidence may rest from time to time during the progress of the trial. The position of the plaintiff here is that when it was shown that the stock in question was paid for by the plaintiff and when evidence was introduced that the stock was delivered to defendant's testator in trust, that the presumption of ownership arising from the possession by the donee, and the fact that same stood in his name on the records of the Company, was destroyed. Now the facts from which this presumption arose establish important elements of a gift. In truth and in fact they establish conclusively all the elements of a gift, save and except as to the intention with which the acts were performed. The question of intention was the vital and issuable fact as to this group of stock.

The situation existing as to the ownership of the stock was brought about by the voluntary acts of the plaintiff. Here it is not claimed that it is a case of resulting trust; but the plaintiff relies on an express trust. It is true that this trust is a dry, naked legal trust. But we think the title of the defendant rested on something more than a mere presumption. In our opinion, in the record there are cogent circumstances indicating that it was the intention of plaintiff to make this gift. The voluntary causing the stocks to be taken in the name of her son is a fact and not a mere presumption.

In the case of Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763, the Supreme Court was dealing with a case where the fact from which the presumption arose was shown to have no existence. The Empire Gas & Fuel Company did not take out the permit from which it was sought to presume that it owned the truck involved in the accident. Here, plaintiff did cause the title to the stocks to be taken in her son's name, and did cause the certificates evidencing his ownership therein to be delivered to him. There, the fact, the basis of the inference of ownership, was itself called into question.

From the defendant's standpoint we have these evidences of intention to make a gift, none of them, of course, conclusive in themselves, some perhaps merely corroborative. In the first place there is the means to make the gift, the gift not out of proportion to the financial ability of the donor; further, there is the relationship of mother and son. Her husband's will was perhaps the source of this property in part at least. In that will there is expressed the confidence that the property will be used for the best interests of the donee. Furthermore, at the same time this stock was placed in the name of defendant's husband, an equal amount of stock was placed in the name of the brother. These two sons, so far as the record goes, are the only objects of plaintiff's bounty. She expressed the intention of ultimately giving the entire property to the sons. At the time the alleged gifts were made she had reached an age in excess of seventy years. One son was about fifty-four, the other about forty-six. Presumptively they had reached an age of mature discretion, and the evidence does not indicate that either was unable to care for property wisely.

It is argued that the finding of the jury as to the 40 shares of 8% preferred stock is inconsistent with the finding as to the 30 shares of 6% preferred stock. As to these two groups the evidence was different. As to the 8% stock, it was held in the mother's custody endorsed in blank, the written acknowledgment heretofore quoted herein was executed as to same. The 8% stock was issued in the name of the two sons in about 1936. The 6% stock was not issued until sometime in 1939. In 1939, when we consider the evidence as a whole, there is some evidence at least, circumstantially, it is true, that the mother was seeking to divide part of the estate equally between the two sons. Circumstantially the conduct of the two sons has some bearing on this matter. Before 1939 they exchanged mutual acknowledgments and admissions that the beneficial title to the stock was in their mother; but as to the shares of stock as now vested in each group, there was no such acknowledgments.

Plaintiff contends that there was no question of credibility to be passed upon by the jury as to the testimony of H. T. Ellsworth. H. T. Ellsworth was a son of plaintiff. The explanation of why the stock was to be placed in the name of his brother was not

a usual or customary transaction. The claimed object was to give him prestige by attendance on stockholders' meetings. Now it might be that the preferred stock gave a right to participate in these meetings, but the San Antonio Public Service Company is the only Company as to which it seems probable that stockholders' meetings were held in San Antonio. As to one of the other Companies in which he held stock he had only three shares. If the intention was when the 40 shares of preferred stock were placed in his name to merely give him prestige, there is some evidence of the abandonment of this intention. We refer to the new arrangement as to the holding of the stocks all made in 1939. It must be further borne in mind that H. T. Ellsworth is probably the sole heir of plaintiff, and might have the expectation of possessing the very property here involved if it be awarded to plaintiff. We think the question as to the 30 shares of stock was for the jury. The findings of the jury thereon were supported by the evidence.

We pass now to the consideration of the 25 shares of stock in the Central Power & Light Company. It will be recalled that up to 1939 these shares on the records of that Company stood in the name of H. T. Ellsworth. Such was the situation from sometime prior to the death of his father to 1939. His father held the certificates bearing his endorsement in blank. His mother so continued to hold them until sometime in 1939 when she delivered them to her son with directions to have new certificates issued therefor, 25 shares in his name and 25 in the name of a brother. This direction was complied with and the shares so issued. The Company upon the request of H. T. Ellsworth sent him the shares issued in the name of his brother Leslie. These certificates were sent him under the condition that they were to be delivered to Leslie. The certificate was retained by H. T. Ellsworth and never delivered to Leslie.

■ A share of stock differs in its nature from the certificate evidencing the ownership thereof. The certificate is not the stock, but the evidence of ownership. Plaintiff, when she had the shares issued in the name of Leslie, practically put the same out of her control. It would have been very difficult for her to have transferred same or collected dividends thereon without the concurrence and acquiescence of her son Leslie. H. T. Ellsworth received the new stock from the Company for delivery to his brother Leslie. We think circumstantially the issue and advancement to each son is raised as to this stock.

■ If a clear intention is manifest at the time to give personal property to another and relinquish control thereof, this is sufficient. Lord v. New York Life Insurance Co., 95 Tex. 216, 66 S.W. 290, 56 L.R.A. 596, 93 Am.St.Rep. 827.

We do not mean to hold that a gift of personal property may become consummated without actual or symbolic delivery of the property.

The authorities seem to be divided as to whether the voluntary causing the records of the Company to show that the stock is in the name of the donee is sufficient delivery. However, we think as to these 25 shares of Central Power & Light Company stock that, taking into consideration the circumstances, what plaintiff did was to practically partition the 50 shares of stock, the equitable title to which had theretofore stood in the name of H. T. Ellsworth; it is sufficient delivery and sufficient to show delivery of these shares of stock as distinguished from the certificates evidencing same. We think there is sufficient evidence to sustain the finding of the jury with reference thereto.

The 3 shares of City Service, 15 shares of Otis Steel Company, the 5 shares of National Distillers Products, and the 15 shares of Schenley Distillers may be considered together. These shares were found not to be the property of plaintiff at the time of her son's death.

These shares, as evidenced by certificates as they stood at the time of Leslie Ellsworth's death, were each a portion of a larger number of shares the record title to which stood in the name of Leslie Ellsworth. These larger certificates were surrendered by him at the direction of his mother and the certificates involved here issued in his name and approximately the same amount of each stock in the name of his brother. In this case the partition of the stocks between the brothers does not seem to have been exactly equal. At the time of his death all of these stocks were in the possession of Leslie Ellsworth, save one group of them, which he had theretofore pledged to secure an indebtedness.

Let us assume that the money of plaintiff purchased all of these stocks.

After the reissue of the stock to the respective sons neither executed an acknowl-

edgment of the ownership thereof in the mother. Prior to their issuance Leslie Ellsworth and defendant had executed an acknowledgment in substantial accordance with the one heretofore copied herein.

We believe what we have heretofore said in relation to the 30 shares of 6% San Antonio Public Service stock is applicable here. It was an issuable fact as to whether a gift or a trust was intended. The evidence is sufficient to sustain the finding of the jury as to these stocks.

■ As applicable to the entire seven groups of stock in controversy, we deem it unnecessary to decide as to whether the burden of producing evidence to show that same were gifts was upon defendant. If at any time this burden was upon defendant, we still believe the evidence, considered as a whole, sustains in each case the findings of the jury.

■ Error is charged in overruling the objection of plaintiff to a detailed examination of her as to the nature and extent of the estate possessed by her. The objection was that the testimony was irrelevant and immaterial. On the issue of gift the testimony of her financial condition was relevant, not perhaps as direct evidence of the gift, but to show circumstances consistent with the intention to make a gift. The evidence was not irrelevant and immaterial. The mode of showing her financial condition might have been objectionable, but the testimony was not subject to the objection urged. The assignment is overruled. Robbins et al. v. Wynne, Tex.Com.App., 44 S. W.2d 946.

■ During the course of the trial defendant caused plaintiff to be served with subpoena duces tecum, commanding as follows: "All records pertaining to income tax returns and copies of returns of the years 1936, 1937, and 1938 filed by Mrs. H. E. Ellsworth, all stocks and bonds belonging to Mrs. H. E. Ellsworth and which were owned by the witness before October 10, 1939, or inventory of those stocks and bonds."

After same had been served, relative thereto defendant's counsel asked plaintiff if she had complied with the subpoena to produce the income tax reports. Plaintiff's counsel objected on the ground that the question was irrelevant and immaterial for the reason the subpoena was not a valid and legal subpoena, in that it was an attempted violation of her constitutional rights. This objection was overruled. Her reply thereto seems to have been that she did not bring them because she did not have them. Thereafter counsel asked her if she had brought copies of the income tax returns, to which she answered she had not, that she did not have them. She was then asked if she had brought the stocks and bonds she had in her lock box. There was, we presume, the same objection, which was overruled, and she answered she had not. Plaintiff's statement shows that defendant then offered in evidence the subpoena. Plaintiff objected, was overruled, and the subpoena read. Asked if she would comply with the subpoena she said, after consultation with her counsel, she would not do so unless ordered by the court. Without passing on the validity of the subpoena, we hold, in view of the objection made, error is not shown. If the subpoena was valid it was an order of the court. Her reply indicated an intention not to defy the legitimate orders of the court, but her subservience thereto.

■ There is an assignment as to the admission of evidence of H. T. Ellsworth as to a nine hundred dollar foreclosure suit pending in Laredo between plaintiff and defendant, wherein plaintiff sought to foreclose a lien on certain property of defendant. Plaintiff objected to this testimony on the ground that same was irrelevant and immaterial. No reversible error is shown by the assignment. It might have some bearing on the credibility of plaintiff.

■ No reversible error is shown in the manner of the court, at the instance of the defendant, applying the rule as to the witness H. T. Ellsworth. It is perhaps more regular to invoke the rule before the pleadings are read and the testimony starts, but no harm appears to have been occasioned to plaintiff by the placing of the witness under the rule.

This case seems to have been thoroughly and ably tried. Counsel for the respective parties have displayed energy and skill in the presentation thereof.

What we have heretofore said we think disposes of the assignment relating to the verdict being against the preponderance of the evidence. The case presents an issue as to a gift, but a gift which was asserted before the death of the donor.

We want to express appreciation for the able briefs counsel for the respective parties have filed in this case. Same are char-

acterized by thoroughness, directness and frankness. A sincere desire on each side to have the law applied to the facts involved is manifest. The record shows that this was the mutual attitude of counsel in the District Court.

We find no reversible error in the record, and the case is therefore affirmed.